## MAGNUSON v. WAGNER.

(Circuit Court of Appeals, Eighth Circuit. August 11, 1924.)

No. 248.

1. **Statutes** ⬤═188, 206—**Reasonable meaning of statute preferred in construction, and all words must have effect.**

Apparent, plain, reasonable meaning of a statute is to be preferred to any concealed interpretation developed only by study and reflection of acute and powerful minds, and all words of a law must have effect, rather than that part should perish.

2. **Bankruptcy** ⬤═396(3)—**Exemptions** ⬤═50 (1)—**Bankrupt may claim exemption of life policy; life policies with surrender value under $5,000 exempt under South Dakota statute; "proceeds."**

Under Rev. Codes S. D. 1919, § 9310, life insurance policies, regardless of face, are exempt from creditors of bankrupt if aggregate of surrender values is less than $5,000, such surrender value being "proceeds" of such policy, and bankrupt may claim the exemption though statute provides it shall inure to his wife and children.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proceeds.]

Petition to Revise Order of the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

In the matter of the estate of Peter D. Magnuson, bankrupt; W. W. Wagner, trustee. On petition by bankrupt to revise order concerning exemption of insurance policies. Case remanded, with directions.

Joe H. Kirby, of Los Angeles, Cal. (Kirby, Kirby & Kirby, of Sioux Falls, S. D., on the brief), for petitioner.

A. B. Fairbank, of Sioux Falls, S. D. (Henry A. Muller, of Sioux Falls, S. D., on the brief), for respondent.

Before SANBORN and LEWIS, Circuit Judges, and SCOTT, District Judge.

SANBORN, Circuit Judge. Peter D. Magnuson was adjudged a bankrupt by the United States District Court of South Dakota October 8, 1920, on a petition filed June 2, 1920. At the time that petition was filed he had three policies of life insurance, the beneficiary in each of which was his wife, and under the terms of each of these policies he had the right to change the beneficiary. These policies were, one issued by the Mutual Life Insurance Company of New York for $3,000, one issued by the Prudential Life Insurance Company for $2,000, and one issued by the Northwestern Mutual Life Insurance Company of Milwaukee for $20,000. The aggregate of the surrender values on June 2, 1920, of the first two policies was $680.95, and the surrender value of the $20,000 policy was $1,125. The aggregate of the surrender values of the three policies was $1,805.95. Mr. Magnuson claimed the three policies as exempt from the claims of his creditors. The referee allowed him the policy for $3,000 and the policy for $2,000 and refused to allow him any exemption on account of the policy for $20,000. Upon the presentation of this matter by proper proceedings the court below confirmed the action of the referee and ordered the surrender value $1,125 on the policy for $20,000 to be paid over to the trustee. The petition to revise prays for a review and reversal of this order and the allowance of the exemption of the surrender value of this $20,000 policy from the claims of the creditors of the bankrupt, and one of the questions in this case is: Was the bankrupt or his wife and children entitled to the exemption of the proceeds or surrender value of the three policies aggregating $1,805.95, or was the exemption limited to the proceeds of the aggregate of the surrender values of the two policies for $3,000 and $2,000, respectively? The answer to that question must be found in section 9310 of the Revised Code of South Dakota 1919, which states the law of that state upon this subject at the time the petition in bankruptcy was filed. That section reads in this way:

"Sec. 9310. *Policy Exempt from Debts.* The proceeds of a policy of insurance, to the extent of five thousand dollars, on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of such individual, inde-

pendently of his creditors; and of an endowment policy, payable to the assured on attaining a certain age, to the amount of five thousand dollars, shall be exempt from any of his debts, and the avails of any life insurance, or any other sum of money, not exceeding in amount five thousand dollars, made payable by any mutual aid or benevolent society upon the death of a member of such society, are not subject to the debts of the decedent."

A first or casual reading of this section of the statute suggests no doubt of its meaning. The apparent plain interpretation of it is that it grants an exemption from the claims of the creditors of the bankrupt of the proceeds of his policies of life insurance to the extent of $5,000. The facts that the section also exempts from the holder's debts (1) the proceeds to the amount of $5,000 of an endowment policy payable to the assured on attaining a certain age, and (2) the avails of any life insurance, or any other sum of money, not exceeding $5,000, made payable by any mutual aid or benevolent society upon the death of a member of any such society from the debts of the decedent, and the rule "noscitur a sociis," are very persuasive that the Legislature intended to and did exempt the proceeds or avails in each of these three classes of cases to which the section under consideration refers to the same amount—to the extent of $5,000. No reason occurs to us why the amount of the proceeds or avails so exempted should have been limited to $680.95, as claimed in the case in hand, or to any amount less than $5,000 in the first and second classes of cases treated by the section, and fixed at $5,000 in the third class.

The history of the legislation on this subject confirms this view. Sections 21 and 22 of chapter 51 of the Session Laws of South Dakota of the year 1890 read as follows:

"Sec. 21. *Policy Exempt from Debt.* A policy of insurance on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his or her creditors; and an endowment policy, payable to the assured on attaining a certain age, shall be exempt from liabilities from any of his or her debts.

"Sec. 22. The avails of any life insurance, or any other sum of money made payable by any mutual aid or benevolent society upon the death of a member of such society, are not subject to the debts of the deceased."

In 1896 the Supreme Court of South Da-

kota held these sections violative of the Constitution of that state because they did not limit the amounts of the exemptions specified therein. Skinner v. Holt, 9 S. D. 427, 69 N. W. 595, 596, 597, 62 Am. St. Rep. 878.

In section 728 of the Revised Codes of South Dakota 1903, we find the legislation on this subject in this form:

"A policy of insurance, to the extent of five thousand dollars, on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his or her creditors; and an endowment policy, payable to the assured on attaining a certain age, to the amount of five thousand dollars, shall be exempt from liabilities from any of his or her debts, and the avails of any life insurance, or any other sum of money, not exceeding in amount five thousand dollars, made payable by any mutual aid or benevolent society upon the death of a member of such society, are not subject to the debts of the deceased."

In the Codes of 1903 it had provided that "a policy of insurance, to the extent of five thousand dollars, on the life of an individual * * * and an endowment policy * * * to the amount of five thousand dollars," should be exempt from the debts of the individual whose life it insured. In the Code of 1919 it provided that "the proceeds of a policy of insurance, to the extent of five thousand dollars, on the life of an individual * * * and of an endowment policy * * * to the amount of five thousand dollars," should be exempt. Before this change was made each of the third class of the insured treated in the section was expressly granted an exemption of the avails or proceeds of life insurance to the extent of $5,000, while each of the insured in the other two classes was granted only a life insurance policy to the extent of $5,000, the average value of which would be less than $2,500. The Legislature amended or changed and re-enacted this statute by inserting the words "the proceeds of" before the words "a policy," in the first line of the statute, and by inserting the word "of" before the words "an endowment policy," so that the amended statute on its face certainly appeared to grant an exemption to the extent of $5,000 of the proceeds of a policy of insurance alike to the holder of such a policy and to the holder of an endowment policy and to the beneficiary of life insurance by a mutual aid or benevolent society and thus placed the members of the three classes treated in the law on an equality. The word "of" is a little word, but its insertion by the Legislature before the words "an endowment policy," when it changed this section, argues with almost compelling force that it was the proceeds of a policy of insurance and the proceeds of an endowment policy to the extent of $5,000, and not a policy to the extent of $5,000, that it intended to and did exempt by the change it made.

[1] Again, a policy of life insurance to the extent of $5,000 was exempt under the section before its amendment or change. The natural and probable purpose and effect of the insertion of the words "the proceeds of" before the words "a policy of insurance" and the insertion of the word "of" before the words "an endowment policy" were to substitute the proceeds of the policy for the policy in the exemption granted by the section. Cardinal rules of construction of statutes and contracts are that the apparent, plain, reasonable meaning of a statute is to be preferred to any concealed interpretation developed only by the study and reflection of acute and powerful minds and that "all the words of a law must have effect rather than that part should perish by construction." City of St. Louis v. Lane, 110 Mo. 254, 258, 19 S. W. 533, 534; Knox County v. Morton, 15 C. C. A. 671, 675, 68 Fed. 787; Wrightman v. Boone County, 88 Fed. 435, 437, 31 C. C. A. 570. If the effect of this change in the statute was not to substitute in the section under consideration the proceeds to the extent of $5,000 of a policy of insurance and the proceeds to the extent of $5,000 of an endowment policy for a policy of insurance to the extent of $5,000 and an endowment policy to the extent of $5,000, then all the words of the law which enacted the change in this statute must perish by construction and the statute must remain as it was before the Legislature enacted the modification.

[2] The argument in opposition to these views is that it could not have been the purpose of the Legislature in making the amendment or change, or the effect of such amendment, to substitute the limit of $5,000 of the proceeds of a policy for a policy of $5,000 in this section, because such a substitution would permit one intending to become bankrupt to put immense sums of money in insurance policies, the proceeds or surrender values of which would be less than $5,000 during the first two or three years of their existence and thereby to exempt them from the claims of his creditors. But such a per-

son could never place beyond the reach of his creditors insurance of greater surrender value or of greater proceeds than $5,000, and neither the danger nor the probability of such a course of action seems so probable or imminent as to warrant a judicial construction of the amendment of this statute which would annul it.

The natural rational interpretation of the plain terms of section 9310 of the Revised Code of South Dakota 1919, the history of the legislation which produced it, the unavoidable effect of the amendment of section 728 of the Revised Codes of South Dakota 1903 by placing the words "the proceeds of" at the commencement of the section and the word "of" before the words "an endowment policy," and the rule that "all the words of a statute must have effect, rather than that part should perish by construction," convince that the correct construction of the first clause of this section is that it exempts, not a policy of insurance on the life of an individual to the extent of $5,000, but the proceeds or surrender values to the extent of $5,000 of policies of insurance on the life of an individual from his or her debts to "inure to the separate use of the husband or wife and children of such individual."

But counsel for the trustee in bankruptcy earnestly and persuasively contend that even if the proceeds or surrender value of the policy for $20,000 was exempted by the statute from the claims of the bankrupt's creditors, nevertheless the trustee for the creditors is entitled to take and distribute those proceeds or surrender value among the creditors as against the bankrupt, because the statute provides that these proceeds "shall inure to the separate use of the husband or wife and children of such individual (here the bankrupt) independently of his creditors," and the bankrupt is the individual insured and neither his wife nor his children. This petitioner had a wife and son when the petition in bankruptcy was filed. His wife was the beneficiary in all the policies, and he had the reserved right to change the beneficiary in each of them at will. The referee allowed to him as exempt from the claims of his creditors the policies for $2,000 and $3,000, respectively, and the court below held that the interpretation of section 9310 "which guided the referee in setting aside policies of insurance for five thousand dollars for the benefit of bankrupt's wife and children, and refusing the demand of the bankrupt to allow him the surrender value of the twenty thousand dollar policy as exempt to him, was correct."

This conclusion rested upon the opinion of the court below that the extent of the exemption granted by section 9310 was not the proceeds or surrender value to the extent of $5,000 of the policy or policies of insurance on the life of the bankrupt, but only the policy or policies to the extent of $5,000 on his life, an opinion in which for the reasons already stated we are unable to bring our minds to concur. The effect of the conclusion of the court below was to allow and deliver to the bankrupt so that they should "inure to the separate use of the husband or wife and children of" the bankrupt "independently of his creditors" the two policies and the aggregate of their surrender values $680.95 and to deny him for the use of his wife and children and to deliver to the trustee to be distributed to the bankrupt's creditors $1,125, the surrender value of the $20,000 policy. The contention is that the bankrupt himself is not entitled to this policy or to its surrender value for his own benefit, that if exempt from the claims of his creditors, it is only exempt that it may inure to the separate use of his wife and son and that they alone and not he may successfully claim this exemption against the trustee. But, unless we are in error in our construction of section 9310, neither the trustee in bankruptcy nor any of the creditors he represents has any right, title, or interest in, or claim legal or equitable to, this $20,000 policy or to its actual or surrender value and he is seeking to get and to hold them, not that they may inure to the separate use of the wife and son of the insured, but that they may never so inure but may inure to the creditors of the insured. On the other hand, the bankrupt bought and paid for this insurance policy and made his wife the beneficiary thereof. The policy is a contract, not between him and his referee in bankruptcy, or his creditors, but between him and the insurance company, a contract to which the trustee is not and never was a party. The bankrupt's reserve right to change the beneficiary, his relation to his wife and son, his acts for their benefit in purchasing and maintaining this insurance and in saving it and its surrender value from his creditors who are not entitled thereto, leave no doubt that if they are delivered to him they will be much more likely to inure to the benefit of his wife and son than if they are delivered to the trustee for his creditors. Moreover, he has the legal right and the equitable interest requisite to enforce the contract of insurance between himself and the insurance

company and to enforce the law applicable to that contract against the trustee in bankruptcy and to secure, hold, and apply the policy and its surrender value to the separate use of his wife and son as against such trustee and the creditors he represents, and the conclusion is that this petition to revise must be granted.

Let this case therefore be remanded to the court below with directions to set aside and avoid that part of the order of the referee Hon. Robert J. Gamble made on April 18, 1922, which directed the petitioner and his attorneys, Kirby, Kirby & Kirby, to turn over to the trustee in bankruptcy the surrender value of the policy for $20,000, to set aside and avoid the order of the court below confirming that part of the order of the referee and directing the petitioner and his attorneys to turn over $1,125, the surrender value of the $20,000 policy, to the trustee, and to render and enter orders and decrees in this case in accord with the views and conclusions expressed in this opinion.