# CHARLESTON.

## WOODCOCK v. BARRICK AND YOST.

Submitted January 16, 1917.    Decided January 23, 1917.

1. JUDGES—*Disqualification.*

    A judge of a court in this state is not disqualified to preside in a cause pending in his court, either by section 9, chapter 112, Code 1913, as amended by chapter 71, Acts 1915, or by the terms or spirit of section 11, of said chapter, because one or more of the parties to such cause is counsel for such judge in another cause pending in his court, or in some other court. (p. 456).

2. APPEAL AND ERROR—*Harmless Error—Dissolution of Injunction.*

    The continuance of a motion to dissolve an injunction, on the motion of the party enjoined, the injunction remaining in force, is addressed to the sound discretion of the court, and will not amount to reversible error unless plainly prejudicial to the interests of some party affected thereby. (p. 457).

3.  COURTS—*Jurisdiction—Situs of Real· Property—Conveyances.*

The courts of one state may by decree compel persons subject to its jurisdiction to make personal conveyances of land in another state, and to do any other act which without reference to the decree would affect the land according to the lex rei sitae. In such cases the conveyance and not the decree passes the title. (p. 457).

4.  ABATEMENT AND REVIVAL—*Another Action Pending—Issues.*

The pendency of a suit for partition in the courts of the state where land is situated, and a decree of ·partition therein, reversed on appeal by an appellate court, and remanded for further proceedings, will not estop or preclude the grantor in one of the deeds involved in said partition suit from maintaining a suit in the courts of another state where the deed was made and where the parties thereto reside, to obtain a decree requiring a reconveyance of the land to him upon the ground of fraud and deceit practiced by the grantee in obtaining such deed, unless this question was fully presented by pleadings and proof, and actually adjudicated in such partition suit. (p. 458).

5.  ATTORNEY AND CLIENT—*Compensation.*

Where, after his employment, an attorney at law procures from his client a deed or contract for land or personal property, the subject of his employment, or for greater interests therein than his original contract called for, whether fraudulently or otherwise, he may be compelled at the election of his client to reconvey the real estate, or ·surrender for cancellation the contract for the personal property. (p. 461).

Appeal from Circuit Court, Wetzel County.

Suit by William R. Woodcock against Charles W. Barrick and another. From decree for defendants, plaintiff appeals.

*Reversed, decree entered for plaintiff, and cause remanded.*

*Thayer M. McIntire,* for appellant.

*E. H. Yost,* for appellees.

MILLER, JUDGE:

The object of the bill was, first, to have cancelled and set aside as clouds on plaintiff's title a contract of June 24, 1913, between plaintiff and defendant Barrick, procured by Barrick, and supposed to contain the terms of his employment by plaintiff, *as an attorney at law,* to represent him in certain litigation begun or threatened, and in respect to his

interests in the estate of his uncle, the late Edwin M. Stewart, a one half interest in which contract was, on June 28, 1913, assigned by Barrick to defendant Yost; and also to obtain a decree requiring said Barrick and Yost to reconvey to plaintiff all his right, title and interest in and to all the property mentioned and described in seven several paper writings purporting to have been made and executed by plaintiff to them, all dated June 30, 1913, as follows: First, a deed purporting to convey to defendants jointly, "in consideration of the sum of one dollar and other good and valuable considerations, paid and settled", the receipt whereof is thereby acknowledged, all his (plaintiff's) "right, title, interest and claim in and to all the real estate, oil, gas and other minerals of which Edwin M. Stewart died seized and possessed, situate in Jackson Township, Monroe County, Ohio"; also "all the oil and gas royalty, or oil royalty, or gas royalty, that has been produced from the lands aforesaid, from the date of the death of the said Edwin M. Stewart, to-wit: from the 2nd day of April, 1912, up to this date, together with full power and authority to the said parties of the second part, the said Charles W. Barrick and E. H. Yost to sign, execute, acknowledge and deliver in my name any receipt, order or division order or other paper necessary to be signed in order for the said Charles W. Barrick and E. H. Yost to receive and receipt for all of said oil royalty and gas royalty that I may be entitled to as one of the heirs of the said Edwin M. Stewart, deceased."

Said deed also contains this provision: "But this conveyance is made upon the express agreement that the said parties of the second part are to settle and account to me for one half of all the proceeds of my interest in the estate aforesaid."

Second, six other papers, all of them, except the first, which recites no consideration, purporting to be "for value received", and without reservation or exception, purporting to assign to defendants respectively all plaintiff's right, title, interest and claim, (1) to a certain sum of $401.72, in the hands of W. H. Boyd and T. J. Moffett, under an agreement of October 17, 1912; (2) certain bonds and stock owned by

the said Edwin M. Stewart at his death; (3) three shares
of the capital stock of the Dollar Savings and Trust Com-
pany, of Wheeling, West Virginia, standing in the name of
said Stewart at his death; (4) ten shares of the capital
stock of the National Exchange Bank of Wheeling, West
Virginia; (5) thirty shares of sixty seven shares of the com-
mon stock of the Columbus Street Railway Company, also
owned by said decedent; (6) one first mortgage six per
cent. gold bond, No. 33, of the Mound Coal Company, of
Wheeling, West Virginia; and all of said several assignments
purporting also to constitute said defendants plaintiff's true
and lawful attorney for him and in his name, place, and
stead, to make transfers of said stock, bonds, etc., and with
power of substitution, etc.

The interests of the plaintiff in said real and personal
property, as alleged, was an undivided fourteen one thous-
and and eightieths, (14-1080), and the grounds alleged for
the relief prayed for are substantially: First, that at the
time said several contracts, deeds, and assignments purport
to have been made and executed the relationship of attorney
and client had already been established between plaintiff and
defendants, and that the properties purporting to be con-
veyed or assigned constituted the subject matter of their
said employment, and that plaintiff has the right, at his elec-
tion, to rescind or nullify said deeds and contracts, which
for the reasons alleged he has elected to do: Second, that
plaintiff's original contract, first with defendant Barrick,
and afterwards with Yost also, after assignment by Barrick
to him of a half interest therein, was that for their services
for representing his interests in said properties and in re-
covering the same, they were to be paid by plaintiff one half
of the net proceeds realized by him from the property so re-
covered; that at the time of said purported conveyances no
services had been rendered by said defendants, and notwith-
standing the recitals in said papers no consideration was
ever paid plaintiff by defendants therefor: Third, that at
the time plaintiff signed said first contract with defendant
Barrick, of June 24, 1913, after his employment, as aforesaid,
Barrick, as a means of procuring the same, falsely repre-

sented that it was intended simply to secure him his fees as agreed for services to be rendered, and that plaintiff relied on the reading and interpretation thereof by said Barrick, and trusted in him, and did not read the same himself; that subsequently, and but a few days later, namely, on June 30, 1913, when plaintiff was procured by said Barrick to sign and acknowledge an absolute deed to Barrick and Yost, of that date, for all of said real estate and royalty interests, and with the provision for an accounting only by the grantees to him for a half interest in the proceeds of said property, and the making of said several assignments of the same date purporting to sell and transfer to them his interest in said personal property, Barrick falsely represented to him that they, with a number of other papers, were simply notices to the corporations or other persons affected of his (plaintiff's) interest in said stocks and bonds, and of defendants' right to represent him in reference thereto, and that he so read some of them to plaintiff, who trusted him, and did not read them himself, and that plaintiff was not advised to the contrary nor of the claims made by defendant under said deed and assignments until shortly before the beginning of this suit; and that respecting the interest of plaintiff in the estate of his mother Mary Woodcock and of his father George B. Woodcock, referred to in said agreement of June 24, 1913, plaintiff then had no interest therein and made no claim thereto, and did not agree to assign or transfer to defendants any such interest therein: and Fourth, that defendants, claiming under said alleged contract, deed, and assignments, first intervened by a so called cross petition in a certain suit in partition, in Monroe County, Ohio, brought by John L. Woodcock against plaintiff, themselves, and others, to partition said real estate, and oil and gas interests, setting up in accordance with the allegation of the plaintiffs' petition therein, that plaintiff and themselves were owners in fee simple of interests in said land and oil and gas interests, in the proportion of seven one thousand and eightieths (7-1080) to plaintiff, and seven twenty one hundred and sixtieths (7-2160) respectively to each of themselves, and that the decree or order of partition, pronounced by said court,

on January 31, 1916, on the pleadings therein, so ascertained and adjudged their respective interests in said property; but that defendants on their own behalf had appealed from said decree, claiming in their own right, the entire interest of plaintiff in said real estate, and that on the 19th day of January, 1916, defendants as plaintiffs had filed a new and independent petition in the Court of Common Pleas, of said Monroe County, Ohio, omitting plaintiff as a party plaintiff or defendant thereto, alleging themselves to be each seized and possessed of seven one thousand and eightieths interest in said property, and entitled to partition in that proportion, or the entire interest of plaintiff in said real estate, and sought partition thereof on that basis, notwithstanding the facts alleged in the cross petition in said former suit, and the decree therein; and it now appears, not from the record of said first suit, but from the admissions and claims of counsel for defendants herein, that the Circuit Court for said Monroe County, upon the appeal by said Barrick and Yost, reversed the decree of the Court of Common Pleas, and held, according to the opinion of Pollock, Judge, who pronounced the opinion of the court, that defendants Barrick and Yost were seized and possessed of all the rights which plaintiff had in the property described in the petition, and subject only to the provision for an accounting of the proceeds thereof contained in the said deed of June 30, 1913, this notwithstanding the record of the proceedings in the case presented here by defendants with their so called plea in equity, does not show any pleadings or issue by plaintiff or defendants involving the rights of the parties under said pretended deed, but only the rights of the parties as alleged in the petition and the cross-petition filed by Barrick and Yost on behalf of themselves and plaintiff herein.

The present bill also alleges that defendants have intervened in a certain attachment proceeding in Wetzel County, West Virginia, involving plaintiff's rights to certain property and money therein, and by virtue of some or all of said contracts or deed and assignments, are claiming against plaintiff's creditors all of said property and money, in their own right.

Upon the prayer of said bill in addition to the other pray-
ers thereof plaintiff obtained an injunction restraining and
inhibiting defendants from prosecuting the said action in
Monroe County, Ohio, and from prosecuting their claim
to the money paid into court in the suit pending in the Cir-
cuit Court of Wetzel County, and also from in any other
way conveying or encumbering said real estate and personal
property until the further order of the court.

The bill further alleges in substance that said supposed
contract, deed, and assignments were without consideration,
and were so fraudulently and deceitfully procured, and
that no consideration whatever was ever paid by either Bar-
rick or Yost therefor, and were so procured not for the pur-
pose of faithfully representing plaintiff, but for the fraudu-
lent purpose of wrongfully defrauding and cheating him out
of his property, and that their acts and conduct in reference
to the property, and in pretending to prosecute and defend
said suits had been acts of misrepresentation, and that the
entire consideration for all of said contracts, deed, and as-
signments had failed.

Upon a petition filed by plaintiff in March, 1916, a rule in
contempt was awarded against defendants for alleged viola-
tion of the said order of injunction, which rule was answered
by defendants, denying violation thereof, but admitting the
perfecting of their appeal from the said decree of partition,
and it would now seem from briefs of counsel, that pending
said injunction they also actually obtained a hearing on and
reversal in their favor of said decree of partition, although
this fact does not otherwise appear from the record.

Defendants, though summoned, filed no answer to the bill,
and none of the allegations thereof have been put in issue by
the pleadings.    They have contented themselves with the
filing of their plea to the jurisdiction, and of former adjudi-
cation by the judgment or decree of the Court of Common
Pleas, of Monroe County, Ohio, in said partition suit, and
thereby have challenged the jurisdiction of the Circuit Court
of Wetzel County, West Virginia, and vouched the record of
said suit and the judgment or decree of partition pronounced
therein on January 31, 1916, in support of the said plea,

but not the supposed decree of reversal by said circuit court; and as to said personal property they aver that the same is in custodia legis in the circuit court of Wetzel County, and is subject also to the jurisdiction of the probate court of said Monroe County, Ohio, in the settlement of the accounts of William F. Stewart, trustee.

Plaintiff did not stand alone on the allegations of his bill, taken for true on default of defendants to answer the same, but took evidence supporting the allegations thereof relating to the manner of obtaining said contract, deed, and other papers, and of the false representation of Barrick as to the character and effect of said papers, which together with the facts and circumstances alleged or admitted, with reference to the proceedings in other courts, satisfy us beyond doubt that plaintiff is entitled in part to the relief prayed for, unless the plea of the pendency of the suits in Ohio, or the former adjudication therein should prevail.

The court below, however, does not appear to have disposed of the case on the issue presented by the plea; for as the decree recites, the court "on its own motion" dismissed the bill of complaint for want of equity therein, and wholly dissolved the injunction.

Preliminary to the main questions, the first point of error is, that the court erred in overruling plaintiff's motion for a change of venue. This motion was based upon the fact that the defendant Yost was attorney of record for the Judge of the court in two suits, one then pending in said court, in which one Long was plaintiff and the Judge and another were defendants; the other the bankruptcy proceeding of the Judge then pending in the District Court of the United States for the Northern District of West Virginia, and that by reason thereof he was disqualified to preside in the trial of this cause. It is not claimed that section 9, of chapter 112, Code 1913, as amended by chapter 71, Acts of 1915, relating to the subject disqualified the Judge to preside in the cause, but that this statute is not exclusive of other grounds such as those relied on in this case, and it is contended that by analogy, section 11, of said chapter, relating to special judges, is applicable, namely, that: "No special judge shall

be eligible to serve in any case in which he has been or may be selected to act if at the time of such election, or afterwards, the relation of client and attorney shall exist between him and any party to the cause wherein he has been or may be selected, whether such relationship shall be in a cause pending in the same, or any other court of this State.'' We do not see that this statute relating to special judges is applicable in terms or in spirit to the question presented here. The relationship of attorney and client, urged in this case, does not disqualify the judge from presiding in a case where his attorney may be a party. If it is possible to assume that because of such relationship a judge would be so unduly influenced and biased in favor of an attorney employed by him, such fact ought to address itself to the consideration of the judge himself, and if conscious of such influence and prejudice he would thereby be enabled to certify on the record that he was so situated in reference to the case that in his judgment rendered it improper for him to preside therein, and excuse himself from presiding. So we overrule the point.

Two other preliminary points of error are made: First, that the court adjourned the hearing of the defendants' motion to dissolve the injunction. As this ruling of the court did not prejudice the plaintiff, the injunction remaining in force, and as such motions are conceded to be addressed to the sound discretion of the court, we also overrule this point. The other point of error is that the court erred in dismissing the rule for contempt. As this proceeding has reached the law side of the court, and is quasi criminal, we do not think the act of the court therein is a proper question for consideration on this appeal. And that point is likewise overruled.

Now as to the fourth point of error, the one presenting the main questions involved, namely, that the court erred in dismissing plaintiff's bill and awarding costs against him. The first question is, does the pendency of the partition suits in Ohio, or the decree of partition therein, reversed on appeal by the circuit court, preclude or estop plaintiff from prosecuting this suit? Plaintiff and defendants are and were at the time of said contracts citizens and residents of Wetzel County, West Virginia, where the contracts purport to have

been executed. It is conceded, however, that in so far as said contracts or deeds relate to the real estate located in Ohio, the courts of this state would have no jurisdiction to set aside, vacate, or annul them, or remove them as clouds upon the title to the land located in that state, and that the object of the bill for that purpose cannot be attained; that to obtain such relief resort must be had to the courts of the state where the land is situated.

But respecting the other form of relief sought, it is contended that as the parties to the deed and contract reside in this state, where they were made, and as to both forms of relief, so far as they relate to the personal estate, the circuit court had complete jurisdiction upon the grounds alleged, to require defendants to reconvey all said real estate or other property to the plaintiff, or to cancel the contract or require the defendants to reconvey all the personal property.

It is well settled, not only by the decisions of this court, but by the highest courts of other jurisdictions, that the courts of one state may compel persons subject to its jurisdiction to make personal conveyances of land in another state, and to do any other act, which without reference to the decree would affect the land, according to its lex rei sitae, and that in such cases that it is the conveyance made in performance thereof and not the decree which passes the title. *Wilson* v. *Braden,* 48 W. Va. 196, 36 S. E. 368; *Poindexter* v. *Burwell,* 82 Va. 507; *Guerrant* v. *Fowler,* 1 Hen. & M. 5; *Tennant's Heirs* v. *Fretts,* 67 W. Va. 569. And this court held in *State* v. *Fredlock,* 52 W. Va. 232, point 2 of the syllabus, that: "A court having jurisdiction in personam, may require the defendant to do, or refrain from doing, beyond its territorial jurisdiction, anything which it has power to require him to do or omit within the limits of its territory." So we think there can be no question as to the jurisdiction of the court in the premises.

The next question is does the pendency of the partition suits in Ohio, or the decree of the Common Pleas Court therein, admitted to have been reversed by the circuit court, and the cause remanded for further proceedings, estop or

preclude plaintiff from maintaining this suit? It is not pretended nor does the record in the Ohio court show, that the issues presented by the bill in this cause were pleaded or adjudicated by the decrees or orders pronounced in those suits. But it is contended that the court there had jurisdiction to settle and determine all questions of title as between the plaintiff therein and his co-defendants, and that as the plaintiff here was represented in those suits by defendants and by Lynch & Lynch, attorneys, whom they associated with them, in a so called cross-petition, and which petition alleged that the cross-petitioners were seized and possessed of interests in said real estate, in the proportions decreed by the decree of partition appealed from by them, and did not set up by any cross pleading and ask to have adjudicated the rights which he seeks to have vindicated in this cause, the questions here presented are res adjudicata, and that his bill was properly dismissed.

Unless the decrees of partition of the Ohio court, reversed by the appellate court, necessarily involved and adjudicated the rights of the plaintiff, it is not a question whether the Ohio court could have adjudicated these rights upon proper pleadings, for we know from the record pleaded that no pleadings by the plaintiff here, or on his behalf, specifically put in issue the facts alleged and relied on in the bill in this cause, and unless the law of the land required plaintiff to intervene in the Ohio court, and that court with jurisdiction of the partition suit withdrew to itself the right to settle and determine all rights of title between plaintiff and co-defendants, and all rights, or rights of action, pertaining thereto, then plaintiff cannot be estopped by the decree or order of the Ohio court from maintaining this suit, for the limited purposes indicated. Moreover, the record in the Ohio court shows that the so called cross-petition filed on behalf of the plaintiff and defendants in this cause was dismissed for want of security for costs, and the appeal from that decree prosecuted by defendants here was hostile and antagonistic to the rights of plaintiff as adjudged by the decree appealed from. Plaintiff here alleges, and it is not denied, that he had no notice of the pendency of the said suit in the Ohio court,

until about the time of the entry of said decree, and that he promptly thereafter brought this suit.

The question then recurs, are the judgments or decrees of partition in the Ohio court an adjudication of the rights of the plaintiff here? We do not think so. Assuming that all the deeds and contracts relating to the real estate were properly pleaded, and were before that court, nothing could have been adjudicated by this decree except that partitioners upon the face of the deeds were entitled to interests as conveyed and in the proportions decreed. True everything must be regarded as settled by the final decrees in these cases, which were or could have been, presented under the pleadings, but nothing more. To bar further action the demand must have been the same and the cause of the demand the same. *State v. McEldowney,* 54 W. Va. 695; *Biern v. Ray,* 49 W. Va. 129; *Dent v. Pickens,* 50 W. Va. 382.

A point made on behalf of the plaintiff here is that because of the want of jurisdiction of the person of defendants by the Ohio court, defendants being residents of West Virginia, personal service upon them in Ohio could not have been had, and the court there could not have acquired jurisdiction to settle the question here presented. But it has been decided by this court, and it is well settled elsewhere, that: "Equity may, upon service of process on a non resident by publication, remove cloud from title to land within its jurisdiction by a decree, binding only in rem." *Tennant v. Fretts, supra.*

Counsel for defendants refer to sections 12026 and 12028, of the General Code of Ohio, and in connection therewith cite some decisions of the courts of that state, including *Roberts v. Remy,* 56 Ohio State 249, to support their contention that the Ohio court would have jurisdiction to settle conflicting claims of title between the plaintiff and co-defendants in the petition. The statutes referred to simply give right of partition and are not unlike the provisions of our own code in relation thereto. But the question we have is not one of power or authority, but whether the Ohio court had exclusive jurisdiction, and we do not think that either the statutes or the decisions cited support the proposition of exclusive jurisdiction contended for. As already indicated,

the controversy here is not limited to the real estate in Ohio; it involves certain personal estate also, supposed to be covered by the contracts or assignments under which defendants are not only asserting title to the personal estate in the courts of Ohio, but in this state also, and according to the decisions cited the circuit court of Wetzel County has jurisdiction to compel reconveyance of the land and surrender or cancellation of the contracts fraudulently obtained for the personal estate. When such relief has been given and the reconveyances made, plaintiff will have the right to interpose such deed or deeds of conveyance against any claim or claims of title by defendants under their deeds or contracts, notwithstanding the decree of partition in the Ohio court.

The final question then is, was the bill properly dismissed for want of equity? We are of opinion that it was not. Of the grounds of equity the first is the right of rescission based on the relationship of attorney and client existing at the time said deed and contracts were so procured. The bill alleges and it is not denied that this relationship was established before the defendant Barrick procured said contract, deed, and assignments, and besides, the evidence of the plaintiff supports this contention. It is argued that the contract of June 24, 1913, simply carries into effect the previous contract of employment, but, as alleged in the bill, and not denied, that contract was not that plaintiff would convey and transfer to Barrick or his co-defendant Yost a one half interest, or the whole interest, in plaintiff's property, but that for services which they agreed to render, plaintiff would pay them one half of the proceeds arising out of the property recovered. The contract of June 24, 1913, and the subsequent deed and assignments procured on June 30, 1913, were quite different in effect from the original contract of employment. They purported to grant and convey larger interests than defendants were entitled to under that contract. They divested plaintiff entirely of all right of title to the property, and subjected him to the will of defendants and the danger of their insolvency. Whether defendants performed any service under the contract entitling them to any of the property so acquired may be doubted. The bill alleges that they

did not and the allegation is not denied; and so far as we can see from what was done by defendants in the Ohio court, it was rather more antagonistic to the interest of the plaintiff than a faithful representation of those interests. True, they filed a so called cross-petition, but it strikes us that petition is misnamed, and besides they allowed it to be dismissed for want of security for costs. There appears to have been no controversy between the plaintiff in the partition suit and the defendants or plaintiffs in the cross-petition; both represented the interests of the parties thereto to be the same, and the decree of partition, reversed on appeal, so adjudged. Defendants may possibly be entitled to some compensation for their services in the suit of G. O. Woodcock against William R. Woodcock, in which the plaintiff therein recovered judgment against defendant for $362.00, and costs. But we do not decide that question; nor do we think it sufficient to defeat plaintiff's rights to relief. According to the decisions of this court and because of the relationship of attorney and client, plaintiff is entitled, regardless of any rights of the defendants, to avoid the contract, deed, and assignments, to compel reconveyance of the real estate to him, and the surrender and cancellation of said assignments of personal property. *Keenan* v. *Scott*, 64 W. Va. 137.

And we are furthermore of opinion that upon the grounds of fraud and deceit practiced in the procurement of said contract, deed, and assignments, by the defendant Barrick, plaintiff is entitled to like relief.

Our conclusion, therefore, is to reverse the decree, and enter such decree here as we think the circuit court should have entered, perpetuating the injunction, and requiring the defendants and each of them to make, execute, and deliver to the plaintiff, a deed reconveying to him all the right, title, and estate in and to the lands, and in the oil and gas royalties and rights mentioned and described in his contract with Barrick, dated June 24, 1913, and in the subsequent deed of June 30, 1913, properly acknowledged for record, and that the said several assignments of personal property as described herein be and the same are hereby set aside, cancelled, and annulled, and that they be surrendered by de-

fendants to plaintiff, and that this cause be remanded to the circuit court with directions to execute this decree by proper proceedings to be had herein, and further proceeded with in said court according to the principles herein enunciated and further according to the rules and principles governing courts of equity; and that plaintiff also recover his costs in this court and in the circuit court in this behalf expended.

*Reversed, decree entered for plaintiff, and cause remanded.*