## ASHTON v. SKEEN et al.

No. 5088.   Decided January 5, 1935.   (39 P. [2d] 1073.)
Rehearing Denied May 9, 1935.

*W. R. Hutchinson,* of Salt Lake City, for appellant.

*Bagley, Judd & Ray* and *Ashby D. Boyle,* all of Salt Lake City, and *R. W. Young,* of Oakland, Cal., for respondents.

WADE, District Judge.

On April 19, 1917, Ford Bros. Land & Livestock Company, a Utah corporation, forfeited its charter by failure to pay its annual license tax, and since that time the defendants J. W. Ford, Joseph N. Ford, Elizabeth G. Ford, and Thomas Ford, its surviving directors, have been trustees of its assets. About May 14, 1918, Ford Bros. entered into a contract with Skeen & Skeen, by J. D. Skeen, which provided that Ford Bros. "hereby employ Skeen & Skeen to institute proceedings against E. C. Ashton and Luther S. Foss to recover upon contracts between Ford Brothers and the Federal Land & Mortgage Company," in which Ashton was trustee. For such services Ford Bros. agreed to pay Skeen & Skeen in cash $160 and 20 per cent of any sum recovered without litigation and 30 per cent of any sum recovered through litigation. By "litigation" is meant any appearance in court other than filing a complaint.

On August 23, 1918, Ford Bros. commenced action against Ashton and Foss for $15,000. (No moral turpitude was charged against Ashton.) On May 1, 1919, Ashton and Ford Bros. settled their differences by a contract in writing which provided that Ashton pay to Ford Bros. $5,000, and they acknowledged payment in full of all claims against him; that Ashton shall be subrogated, to the extent of such payment, to the cause of action against Foss, but the cause of action shall remain in Ford Bros. for the purpose of prosecuting the suit now pending or other suits; that Ford Bros., by their attorneys, will institute and prosecute any proceedings

deemed advisable for recovery from Foss, and, if they fail to institute proceedings for the collection of said money within a reasonable time, then Ashton shall be authorized to institute such proceedings; that out of any collections from Foss the court costs and expenses, including a reasonable attorney's fee, shall first be deducted, and the residue shall be apportioned between the parties thereto in accordance with the amount of their respective claims.

This settlement was negotiated by J. D. Skeen, who was the only person who ever acted on behalf of Ford Bros. under the Skeen & Skeen contract, and he received as attorney's fees 20 per cent of the amount collected. Ashton did not pay cash, but gave his note secured by certain insurance policies. He was killed in a mine accident October 14, 1919, and the balance of the note was paid out of those insurance policies. At the time of the making of this payment, Skeen stated to the attorney for Ashton's estate that he was acting under this contract of May 14, 1918. Skeen continued to attempt to collect from Foss, without any further arrangements with Ford Bros. or Ashton. Foss left the state before January, 1919, and Skeen, in trying to locate him, sent many letters and telegrams, and commenced an action on this claim in the federal court at Los Angeles on September 14, 1921. Foss was served with summons on April 19, 1922, and Ford Bros. paid an additional sum of $50 for an associate counsel in California. After several motions and demurrers were argued and the case became at issue and was set for trial a number of times and Skeen had made several trips to California, Skeen made a settlement with Foss, Ford Bros. consenting thereto, in October, 1925, for $250 cash and a note for $5,000, and it was agreed that all actions should thereupon be dismissed. Skeen asked Ford Bros. to allow him one-half of this amount on account of the expense he had been put to, and they accepted $125.

Skeen kept the Foss note in his possession, and continued to follow him through several states until December 13, 1928, when he received word from Foss in Ohio. Thereupon

he asked Ford Bros. to allow him 50 per cent of the $5,000 if he collected it, and drew a written contract to that effect, which Ford Bros. took from him but never signed. Foss paid Skeen $5,000 on December 22, 1928, and received back his note. Skeen thereupon purchased a cashier's check from the Continental National Bank, payable to himself for $2,500 and indorsed on the back: "Pay to the order of Ford Brothers in full Luther S. Foss note and account. [Signed] J. D. Skeen." He handed the check to J. W. Ford, who kept it but never attempted to cash it, they insisting that Skeen was entitled to retain only 20 per cent of the amount collected, and there was considerable negotiation thereafter between them.

On February 7, 1929, Mr. Young, as attorney for Ford Bros., made demand for this money on Skeen, and thereupon Skeen notified Mr. Bagley, attorney for the Ashton estate, of what had happened, and at Mr. Bagley's request Skeen wrote and served on the bank a notice requesting it to refuse payment of the check when presented. On March 28, 1929, Skeen's attorneys directed the bank to cash the check if presented.

This action was brought by the administrator of E. C. Ashton's estate against J. D. Skeen and the four Ford defendants mentioned above, as trustees of the defunct corporation and individually for one-third of the amount collected from Foss after deducting the expenses and a reasonable atttorney's fee, which they allege was 10 per cent thereof. They set out the Ashton-Ford Brothers contract in full, and allege that Skeen knew of its contents and that he collected the $250 and $5,000 at the time above stated and paid one-half of the $250 to Ford Bros. The Skeen-Ford Bros. contract is not mentioned in plaintiff's pleadings.

Ford Bros. answered, admitting the allegations of the complaint except their indebtedness, and by cross-complaint alleged their employment of Skeen and that by the contract he was to retain a reasonable fee out of the amount collected,

not to exceed 20 per cent thereof. They also allege that he collected the $250 and $5,000 on the dates above stated, and that he paid to them out of the first amount $125, and they ask judgment against him for $4,000.

Skeen answered the complaint and cross-complaint, alleging his employment by Ford Bros.; that he was to receive a reasonable fee for his services; that he collected the $250 and $5,000 as above stated; that 50 per cent of said sums is a reasonable fee for his services; that he paid 50 per cent of said sums to Ford Bros., who agreed that it was a reasonable fee and accepted it in full settlement of any claim they had against him.

The court found generally the facts as above stated, against the defendant Skeen and in favor of the plaintiff on his complaint and in favor of the defendants Ford Bros. on their cross-complaint, and particularly the following facts:

"That the said Skeen at that time had an agreement drawn up whereby the defendants Ford were to accept in full satisfaction of the claim the sum of $2,500 * * * that after taking said proposed agreement said J. N. Ford notified the said Skeen that they would not accept $2,500 in full settlement, but would insist on 80% of the said $5,000. * * * On the 22nd of December, 1928, Skeen handed and delivered to J. W. Ford a cashier's check on the Continental Bank, which the said Ford took from Skeen but which was never cashed and which check the defendants refused to accept in full settlement of their claim. * * *

"That the defendant Skeen in the month of December, 1928, and in the month of January, 1929, asked the defendants Ford to allow him a fee in excess of the amounts provided in the contract of May 14, 1918, but the defendants Ford did not then, nor at any time nor at all say to the defendant Skeen that they would consent to any modification of the agreement of May 14, 1918, or that they would pay any other or greater fee to said Skeen than the amounts in said contract provided."

The court awarded judgment to the plaintiff against all of the defendants for the sum of $1,333.33 with interest, and judgment in favor of the defendants and cross-com-

plainants Ford and against the defendant Skeen for the sum of $4,000 and interest, and both plaintiff and cross-complainants were awarded costs against Skeen. There is no provision in the judgment that the payment of the judgment awarded to the plaintiff should satisfy to that extent the judgment awarded to the defendants Ford. From this judgment the defendant Skeen appeals.

The first two propositions relied upon by appellant are so closely related that they will be discussed together. They are: That the plaintiff's complaint does not state facts sufficient to constitute a cause of action against appellant, Skeen, and that the court erred in admitting in evidence the Skeen & Skeen-Ford Bros. contract of May 14, 1918.

Counsel for appellant argues that Skeen, not being a party to the Ashton-Ford Bros. contract, is not bound thereby, and so plaintiff has no cause of action against him. There would be much force to this argument if the complaint showed that Skeen had accounted to Ford Bros. for all the moneys he collected except the amount he was entitled to retain as his fee. But we have no such case. In plaintiff's complaint, it is alleged that Skeen collected from Foss $5,000; that one-third of that money, under the Ashton-Ford Bros. contract, belonged to plaintiff after deducting a reasonable attorney's fee, which facts were known to Skeen; and that Skeen has not paid any part of said sum either to Ford Bros. or to plaintiff. This court has held that, where a person receives funds knowing that they belong to another, he thereby becomes responsible for their payment to the owner, even though he received them from a third person and there is no contractual relation between him and the owner. See *Yourt* v. *McKee,* 1 Utah 281; 41 C. J. 47. The complaint therefore states a cause of action.

The court did not err in admitting the contract in evidence. It is alleged in the cross-complaint of Ford Bros. against Skeen that on May 14, 1918, a contract of employment was entered into. Though the terms set out are not in

the exact language of the contract, they are substantially the same. Skeen is clearly limited as to his fees to the amount stipulated in the written contract as between himself and Ford Bros., his client, the parties thereto, and, as between himself and Ashton, who obtained his interest in the property after the contract between Skeen & Skeen and Ford Bros. had been made, Ashton would be entitled to the benefits thereof, he taking the property as he found it.

Appellant next urges that the delivery by him to Ford Bros. of the cashier's check for $2,500, indorsed as the evidence shows it was, which they have not returned but continue to hold, constituted an accord and satisfaction of any claim which they had against him for the money collected on the Foss account, and that he was therefore entitled to judgment. Before there can be an accord and satisfaction by acceptance of a less sum than claimed, there must be an unliquidated claim or a bona fide dispute as to the amount thereof. It is not necessary for the claim to be well founded, but it must be made in good faith, otherwise there is no consideration for an agreement to accept a less sum, and the agreement is void. See 1 C. J. 551 to 556, §§ 71 to 77; Page on Contracts, §§ 615 to 620; Williston on Contracts § 129; *Gray* v. *Bullen,* 50 Utah 270, 167 P. 683; *Rohwer* v. *Burrell,* 42 Utah 510, 134 P. 573; *Smoot* v. *Checketts,* 41 Utah 211, 125 P. 412, Ann. Cas. 1915C, 1113.

Appellant's (Skeen's) fee for making the collection was fixed by a written contract made at the time he was employed at 20 per cent of the amount collected without litigation or 30 per cent of the amount collected through litigation. If appellant had only claimed 30 per cent of the amount collected, then the amount to which he was entitled was to that extent unliquidated, and his claim would have been bona fide and in good faith. But his claim for 50 per cent of the amount collected was greatly in excess of any amount provided in the contract, although he performed

only the services which he was bound by his contract to perform. If the contract had simply provided that he should receive 30 per cent of the amount collected, then clearly his claim would have been liquidated and his claim to 50 per cent would not have been bona fide, or made in good faith, and there would have been no consideration for such an agreement. Can it be said that there would be no consideration for an accord and satisfaction in the case assumed but that there would be a consideration for an accord and satisfaction under the facts of this case? In Williston on Contracts, above cited, the author seems to answer this question in the affirmative, but the cases cited which we have examined merely hold that the payment of the exact amount which is conceded to be owing, not a lesser amount, where the claim is unliquidated, is sufficient consideration for an accord and satisfaction. It is not necessary to decide this question. There the amount of the cashier's check on which appellant's claim for an accord and satisfaction is based was conceded by him to be due and owing to Ford Bros., and it was much less than was due and owing to them under the contract of employment with appellant.

Appellant next contends that the cashier's check, with the indorsement as hereinbefore stated, was tendered on condition that it be accepted in full settlement of Ford Bros.' claim against him, and that retaining it, even though not cashed, amounts as a matter of law to accepting it upon the terms it was offered and resulted in an accord and satisfaction. In support of this proposition he cites the following cases: *Day-Luellwitz Lumber Co.* v. *Serrell,* 177 Ill. App. 30; *Greenlee* v. *Mosnat,* 116 Iowa 535, 90 N. W. 338; *Keck* v. *Hotel Owners' Mut. Fire Ins. Co.,* 89 Iowa 200, 56 N. W. 438; *Fuller* v. *Kemp,* 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785; *Nassoiy* v. *Tomlinson,* 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695; *Seeds Grain & Hay Co.* v. *Conger,* 83 Ohio St. 169, 93 N. E. 892, 32 L. R. A. (N. S.) 380; *Laughead* v. *H. C. Frick Coke Co.,* 209 Pa. 368, 58 A. 685, 103 Am. St. Rep. 1014; *Scheffenacker* v. *Hoopes,* 113 Md.

111, 77 A. 130, 29 L. R. A. (N. S.) 205; *Roach* v. *Gilmer*, 3 Utah 389, 4 P. 221.

These cases generally lay down the rule that, where there is an unliquidated claim or a bona fide dispute, the tender of a sum less than claimed, on condition that, if accepted, it will be in full satisfaction of the greater claim, amounts to an accord and satisfaction. A number of these cases hold that, where a personal check is tendered on the condition, if cashed, it will be in full satisfaction of the disputed claim, and the party receiving it cashes it and at the same time or later notifies the sender that it is only applied on account, it can only be accepted on the same conditions as it is tendered, and, as a matter of law, amounts to an accord and satisfaction. In *Scheffenacker* v. *Hoopes,* supra, defendant sent plaintiff a personal check in full of plaintiff's claim against defendant. Plaintiff did not cash it, but later had it certified by the bank, and the court held that that was the same as cashing the check, since it took the money out of the control of the defendant. In *Day-Luellwitz Lumber Co.* v. *Serrell,* supra, the court held that holding a cashier's check which was sent with a voucher acknowledging payment in full of account, with the request to sign and return voucher promptly, for three and a half months without cashing, returning, or acting in any way thereon, was equivalent to accepting it in payment in full of the account, and resulted in an accord and satisfaction. There are three distinctions between that case and the present case: First, there was no question that there was a bona fide dispute on the amount of the claim; second, that was an ordinary debtor and creditor relation, not a case where the money paid belonged to the person to whom the check was sent, and in that case the relation of attorney and client did not exist; third, in that case the check was held three and a half months without notifying the sender of the check that they refused to accept it on the conditions on which it was sent. In the present case the court has found, and the finding was amply justified by the evidence—and this court is bound by that

finding—that Ford Bros. refused to accept it in full settlement of their claim, and notified Skeen that they wanted more money. Also the evidence is clear in this case that there were continuous negotiations on the matter for a month and a half, in which Ford Bros. demanded more money, and that at the end of that time Skeen notified the bank not to pay the check when and if presented, and then after another month and a half he notified the bank to pay it if presented. This action was brought shortly thereafter. At no time did Skeen ever demand the return of the check or notify Ford Bros. that the mere holding of the check would be treated by him as an acceptance of it as full payment of their account. What the Illinois court would have said had plaintiff in that action immediately stated that they would not accept the check in full satisfaction of the claim and had the defendant in a month and a half stopped payment thereon as in this case does not appear, but the court in the opinion repeats a number of times that there was no repudiation of the conditions attached to the check, and that fact seems to have had some weight with the court in reaching its decision. That case seems to have gone to the extreme limit. In all of the other cases cited by appellant the accord and satisfaction was based on the acceptance of money or by cashing a check which was tendered in full satisfaction of the claim for a greater amount, and in all of them there was either a clear case of a bona fide dispute or sufficient evidence to submit to a jury on that question.

Respondents contend since appellant, Skeen, was the agent of the Ford Bros., and that they, and not he, were the owners of the funds which he held as their agent, and the amount which he tendered to them was conceded by him to belong to them, they had a right to cash the check, regardless of any condition which he attempted to place thereon, and that an accord and satisfaction under those conditions cannot result. And to that effect they cite the following cases: *General Fireproof Construction Co.* v. *Butterfield,* 143 App. Div. 708, 128 N. Y. S. 407, 408; *Wolfe* v. *Mack,* 81 Misc.

185, 142 N. Y. S. 433; *Locomobile Co. of America* v. *Nichols*, 167 App. Div. 849, 153 N. Y. S. 227; *Eames Vacuum Brake Co.* v. *Prosser*, 157 N. Y. 289, 51 N. E. 986; *McKay* v. *Myers*, 168 Mass. 312, 47 N. E. 98; *Day* v. *McLea, L. R.*, 22 Q. B. Div. 610; *Mance* v. *Hossington*, 205 N. Y. 33, 98 N. E. 203; *Demeules* v. *Jewel Tea Co.* (1908) 103 Minn. 150, 114 N. W. 733, 14 L. R. A. (N. S.) 954, 123 Am. St. Rep. 315.

In *General Fireproof Const. Co.* v. *Butterfield*, supra, it is said:

"The money collected by the defendant [an attorney] belonged to the plaintiff. The defendant, at most, had a lien upon it for his services. * * * When the defendant sent the check for a part of the money, he limited his right to compensation to the amount retained by him, and conceded that the amount sent belonged to the plaintiff. Under these circumstances, the plaintiff was not bound to return his own money to defendant under penalty of acknowledging defendant's right to the balance retained. Plaintiff had a right to retain the money paid to it, and sue for and recover any portion of the balance to which it was entitled. It was not a case for the application of the rule of accord and satisfaction. It would not be quite fair for the defendant to say, 'I send you an amount which I concede is yours, but, if you take it, you must acknowledge you are not entitled to any part of the moneys I have retained.'"

The case of *Greenlee* v. *Mosnat*, supra, cited by appellant, is a similar case, and, while the court does not comment on that fact, it does hold that an accord and satisfaction resulted. In *California Bean Growers' Ass'n* v. *Rindge Land & Nav. Co.*, 199 Cal. 168, 248 P. 658, 664, 47 A. L. R. 904, the court said:

"The fact that the relation of principal and agent exists between the parties, of course, is to be considered in weighing the evidence to determine whether there has been an account stated or an accord and satisfaction. Mechem on Agency (2d Ed.) § 1352. That fact was given weight in *Egan* v. *Crowther*, 74 Cal. App. 674, 241 P. 900, 902."

In the case last cited the court said:

"In view of the fact that the relation of principal and agent existed between the plaintiff and the defendant, the evidence was insufficient to sustain the finding of an accord and satisfaction."

The fact that the relationship of principal and agent exists is a fact which should be taken into consideration in determining whether an accord and satisfaction has resulted. The obligation for an agent to pay over to his principal money which belongs to him is a much stronger obligation than that of a debtor to pay what he owes to his creditor. And, for that reason, an agent is held to a higher standard of fair dealing with his principal than a debtor is with his creditor.

The relationship of attorney and client existed in this case, in addition to the fact that the money involved was the property of the respondents and not the property of the appellant, Skeen, and at the time of the employment, a written contract was entered into whereby the amount of attorney's fees was fixed at 30 per cent of the amount collected, if through litigation, and 20 per cent, if without litigation. The evidence shows that just before the collection there was an attempt to get the respondents, the Ford Bros., to sign a written contract to allow appellant 50 per cent of the amount collected, and that, after failing, as soon as the collection was made he again attempted to get them to agree to that fee and handed them this check for $2,500, indorsed in full of this account. The court has found that they refused to accept this, and we feel that there is ample evidence to justify this finding and that we are bound by it.

In this state it is settled by statute that the amount of an attorney's fee for services may be fixed by contract between the attorney and his client. The Revised Statutes of Utah 1933, 6-0-40, provide: "The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law." Section 6-0-41 makes it a misdemeanor for an attorney to refuse to pay money belonging to his client to the person entitled thereto within a reasonable time after demand. Section 6-0-42 provides for the person entitled to the money to put up a bond and receive the money in case the attorney claims a lien thereon, and section 6-0-43 provides that the

attorney may retain the money upon putting up a bond to pay the money to the claimant if he finally establishes his right thereto.

These sections might have been used to advantage in this dispute. Neither party, however, resorted to them. Section 6-0-40 is to our minds a codification of the common-law rule which existed prior to its enactment in this state, though that was not the law in England. See *Lecatt* v. *Salee*, 3 Port. (Ala.) 115, 29 Am. Dec. 249, and *Dickinson* v. *Bradford*, 59 Ala. 581, 31 Am. Rep. 23; *Dyrenforth* v. *Palmer Pneumatic Tire Co.*, 240 Ill. 25, 88 N. E. 290; also note in 19 A. L. R. 847. And since the enactment of this section our Supreme Court in *Omega Investment Co.* v. *Woolley*, 72 Utah 474, 271 P. 797, 802, quoted from *Cooley* v. *Miller & Lux*, 156 Cal. 510, 105 P. 981, with approval:

"The presumption always arises against the validity of a purchase or sale between the client and attorney made during the existence of the relation. The attorney must remove that presumption by showing affirmatively the most perfect good faith, the absence of undue influence, a fair price, knowledge, intention, and freedom of action by the client, and also that he gave his client full information and disinterested advice."

The same rule exists in other cases of confidential relations. See *Peterson* v. *Budge*, 35 Utah 596, 102 P. 211, 216, where the court quoting from 6 Encyc. of Evid. p. 10, said:

"Thus, in transactions between persons occupying such relations, in which the stronger or superior party obtains a benefit or advantage, fraud is presumed, and the burden is cast upon the superior party to show fairness, adequacy, and equity in the transaction."

In the case of *Kidd* v. *Williams*, 132 Ala. 140, 31 So. 458, 56 L. R. A. 879, the court laid down the rule as follows:

"While the confidential relation lasts, and as to its subject-matter, there must be no abuse of confidence with respect to it, by which the attorney secures an unjust advantage over the client. It is easy to see, that in such time, and as to the business in which he is employed, the attorney could make unfair and unconscionable demands to which

the client would yield, although he regarded them unjust, out of the fear of the consequences of a refusal, or from the attorney's undue influence over him. * * * If the client is competent and capable, and with full knowledge of the transaction he proposes to settle with his attorney, acts deliberately, and voluntarily settles his account for services with his attorney, there would seem to be no indispensable necessity for independent advice on the subject. * * * All that is necessary is, for the client to be placed in such a position as would enable him 'to form an entirely free and unfettered judgment, independent altogether of any sort of control.' "

Notwithstanding the rule that contracts between attorney and client are held to be valid, if entirely fair and equitable, while the client forms an entirely free and unfettered judgment, and without any sort of control, yet an agreement between attorney and client, varying the terms of the original contract of employment by allowing the attorney greater compensation than therein provided, is sometimes held invalid, regardless of whether it is fair or otherwise. One of the earliest cases in the United States is *Lecatt* v. *Sallee*, 3 Port. (Ala.) 115, 29 Am. Dec. 249. In the syllabus, which accurately reflects the opinion, it is said that:

"An agreement made by a client, with his counsel, after the latter has been employed in a particular business, by which the original contract is varied, and greater compensation is secured to the counsel, than may have been agreed upon, when first retained; is invalid, and cannot be enforced."

And the court gives the following reasons for the rule:

"The firmest ground for the support of the principle to which the complainant has resorted, for relief, consists of the confidence reposed by a client, in his attorney, and the influence which an attorney has, over his client. * * * Integrity of character and purity of motive, have never enabled such contracts to stand in full force, against the principle of equity, which commonly excludes all inquiry into the fairness of the transactions, and sets them aside, as violations of the policy of justice. * * *

"The principle will best preserve the high reputation of the profession, by elevating its members above the temptation to exercise their influence, to obtain advantageous bargains of their clients; and, consequently, above the suspicion of having done so."

There are many cases which do not go as far as this case, and the views thereon are well expressed by the Supreme Court of Nevada in *Moore* v. *Rochester Weaver Mining Co.*, 42 Nev. 164, 174 P. 1017, 1020, 19 A. L. R. 830, where it is said:

"No principle has been so rigidly adhered to by the courts of this country and England than that where an attorney deals with his client for the former's benefit, the transaction is not only regarded with suspicion and closely scrutinized, but it is presumptively invalid on the ground of constructive fraud, and that this presumption can be overcome only by the clearest and most satisfactory evidence. The rule is founded in public policy, and operates independently of any ingredient of actual fraud, being intended as a protection to the client against the strong influence to which the confidential relation naturally gives rise."

For cases on this subject see: *Gabrielson* v. *Gorin*, 92 Wash. 408, 159 P. 387; *Ritz* v. *Carpenter*, 43 S. D. 236, 178 N. W. 877, 19 A. L. R. 840; *Stern & Swift* v. *Hyman Bros.*, 182 N. C. 422, 109 S. E. 79, 19 A. L. R. 844; *Hughes* v. *Zeigler*, 69 Ill. 38; *Shropshire* v. *Ryan*, 111 Iowa 677, 82 N. W. 1035; *Egan* v. *Burnight*, 34 S. D. 473, 149 N. W. 176, Ann. Cas. 1917A, 539; *Marshall* v. *Dossett*, 57 Ark. 93, 20 S. W. 810; *Blaikie* v. *Post*, 137 App. Div. 648, 122 N. Y. S. 292; *Woodcock* v. *Barrick & Yost*, 79 W. Va. 449, 91 S. E. 396; *Waterbury* v. *Laredo*, 68 Tex. 565, 5 S. W. 81; *Vance* v. *Ellison*, 76 W. Va. 592, 85 S. E. 776; and *Laybourne* v. *Bray & Shifflett* (Tex. Civ. App.) 190 S. W. 1159.

It is not necessary to decide the effect of any one of these facts if they stood alone; that is, whether there is any consideration for the change in the contract, whether or not holding of the check under the circumstances would be sufficient to make an accord and satisfaction, or whether the fact that the money belonged to the respondents and not to the appellant would alone be sufficient reason to prevent an accord and satisfaction, or whether the relationship of attorney and client alone, under the facts shown in this case, would make this agreement invalid. All

that is necessary to decide is that under the facts and circumstances of this case an accord and satisfaction did not result.

Appellant next argues that the court erred in holding that no part of the $5,000 had been paid to Ford Bros. Since the check was issued, neither party has had any use of the money it represents. Skeen could not use it because he had parted with the cashier's check. Ford Bros. could not ■ use it because they were afraid of the legal effect that cashing it might have on their claim against him for more. This money, every cent of it, clearly belonged to Ford Bros. and not to Skeen, and it was Skeen's duty to pay it over to them unconditionally. As pointed out before, the Legislature has made it a misdemeanor for an attorney to refuse to pay his client's money to him, and, from the decisions already cited, it was clearly his duty, as their attorney, not to attermpt to bring pressure to bear on them in order to get them to agree to a change in the terms of the contract of employment whereby he would be allowed a greater fee for his services. We are therefore of the opinion that the court committed no error in such ruling.

The collection of the $5,000 was not through litigation. The record is clear that no litigation was pending or alive at the time the collection was made. It is true that appellant had commenced two suits and had brought them under the definition of litigation as defined in the contract, ■ and, that the $250 was collected as the direct result of the litigation in California. But that action was dismissed because Foss was insolvent and judgment proof, and it was necessary to use something other than litigation to collect this money. Skeen testified that Foss told him he owed $250,000; that he would pay this debt but not his other obligations. In the settlement with Ashton the evidence is that Skeen received 20 per cent of the amount collected. This settlement was made after the suit was commenced, and was made by giving a note and security. The parties themselves

have placed an interpretation by their acts the same as the court reached by its decision. No error was committed by the court in this regard.

This brings us to the question of whether the court erred in the admission and exclusion of evidence. The first question argued is as to the exclusion of evidence which the court in fact admitted, as a careful reading of the transcript shows.

Next it is argued that the court erred in the striking from the record of certain testimony of appellant as to an agreement between himself and the Ford Bros. for the settlement of his attorney's fees. It appears from the transcript that on the first day, when appellant was on the witness stand, he gave testimony of agreements had between himself and Ford Bros. in regard to his fees which was stricken out by the court. But on a later day he was recalled, and, after a long argument, the court allowed him to relate in detail all of the conversations which he had with Ford Bros. wherein they had reached an agreement as to the amount of his fees, and, when his attention was called to the conversations which he had previously given, and part of which he now complains had been stricken out, he answered, "I stated that all yesterday." The motion was again made to strike all of this testimony out, and was denied by the court.

The court in its oral decision discusses the testimony of Mr. Skeen in this regard, and it is evident from that discussion that he considered all of that evidence, and found the facts to be that the original contract had not been modified. We are therefore of the opinion that all of this evidence was received and considered by the court and no error was committed.

Appellant complains that he, while on the witness stand, was not allowed to testify as to whether the Ford Bros. ever returned, or offered to return, the cashier's check for $2,500. It would seem that in some cases this question might be material, but all of the evidence tends to show that they did not offer to return the check, which is

the most favorable to the appellant, and in this opinion we have assumed that to be the fact. So no harm could result to him.

It is next contended that the court erred in striking from the record the testimony of certain attorneys as to the amount of a reasonable attorney's fee for making the collection. Under the views taken in this opinion, it was immaterial, and no error therefore resulted.

Appellant last complains that the court erred in allowing R. L. Judd to testify as to a conversation with Skeen at the time the Ashton estate made its final settlement with Ford Bros., wherein Skeen read from the contract between Ford Bros. and Skeen & Skeen the amount of the attorney's fees he should receive for making the collection. This was clearly admissible. At the time it was introduced, appellant's counsel was making the claim that the contract between Ford Bros. and Ashton, which provided for a reasonable attorney's fee, had superseded the contract between Ford Bros. and Skeen & Skeen as to the amount of attorney's fees, which provided for 20 per cent without suit and 30 per cent with suit. This evidence tended to show that Skeen did not so understand it at that time.

The court entered judgment against the appellant for $4,000 in favor of Ford Bros. and for $1,333.33 in favor of the Ashton estate, and found that appellant was entitled to a fee of $1,000, or 20 per cent of the amount collected, and did not make any provision to the effect that payment of the judgment as to one of the respondents would satisfy the same as to the other. Thus the judgment was, for $333.33 more than appellant collected, and, unless the judgment is modified, he could be compelled to pay the full amount with interest and costs. This seems to be clearly erroneous. The judgment should be modified by providing therein that all moneys paid thereon by the defendant Skeen to Ford Bros., over and above the sum of $2,666.66, should be also credited on the judgment in favor of the plaintiff,

and all moneys paid by him to plaintiff should also be credited on the judgment in favor of Ford Bros.

Judgment is therefore reversed, with directions to the district court to modify the same to conform to the views herein expressed, all parties to pay their own costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.