# CHARLESTON.

## STRAUSS v. RAILROAD COMPANY.

### March 2, 1874.

1874.
January Term.

A contract between M and a railroad company, provides that if M shall fail to prosecute the work with such force as the engineer shall deem adequate to its completion, within the time specified, the engineer, in charge, may proceed to employ such number of laborers, &c., as may be necessary to insure the completion of the work within the time limited; pay all persons so employed, and charge the amount to M: or the company may, for any neglect or omission on the part of M, in complying with the contract, declare the same abandoned and render it void, and the percentage, or as much thereof, remaining in the hands of the company, as may be necessary for its complete indemnity, be forever retained.—HELD:

That on the voluntary abandonment of the work by M, and while the contract is still subsisting between the parties, there is nothing in the hands of the company due to the contractor which may be attached.

The contract provides that an estimate shall be made on the first of every month, of the value of the work, and ninety per cent. thereof paid to the contractor, and that upon the completion of the entire work, a final estimate shall be made, and the balance then appearing due, shall be paid to the contractor: M abandons the work in the middle of a month.—HELD:

That M has earned nothing for the previous part of the month, and that the reserved estimates never became a debt which could be attached.

Appeal, by the Chesapeake and Ohio Railroad Company, from a judgment of the circuit court of Kanawha county, rendered on the 16th day of June, 1873, in a proceeding in garnishment, therein pending, in favor of

Samuel Strauss against the said Railroad Company, as debtors of M. Healey & Co., who were judgment debtors of said Strauss. The material facts appear in the opinion of the Court.

The Hon. Joseph Smith, judge of said circuit court, presided at the time, below.

*William A. Quarrier* and *William H. Hogeman*, for the appellant.

*Mollohan & Nash*, for the appellee.

PAULL, JUDGE :

The plaintiff having brought suit against M. Healey & Co., sued out, on the first day of December, 1871, from the clerk's office of the circuit court of Fayette county, an order of attachment, requiring the sheriff of Kanawha county to attach and take into his possession the estate of the defendants, sufficient to pay the sum of $300, and the costs of suit. On this order, the plaintiff designated, by his endorsments, the Chesapeake and Ohio Railroad Company as a party indebted to, or having in its possession, the effects of the defendants, M. Healey & Co. And a summons was directed to said Company to appear before the judge of the circuit court of Fayette county, and disclose, on oath, in what sum it is indebted to said defendants, and what effects of said defendants it has in its hands.

This order of attachment and summons were served on said Railroad Company, by delivering a copy thereof to H. Chester Parsons, one of the directors of said Company, on the 8th day of December, 1871. In May, 1872, the Railroad Company tendered its answer, alleging that the said Company was not, at the time of the service of said order of attachment, nor has said Company at any time since said service, been indebted to the defendant in this cause, or had in its possession or control, any goods, chattels, money, securities or other effects, belonging to the said defendants. To the filing of this answer, the

47

plaintiff excepted, and the exception was sustained by the court. At a term of said court, however, held in May, 1872, the exception was withdrawn, and the answer filed. And thereupon, the plaintiff suggested, upon the record, that the said garnishee had not fully disclosed the debts due by it, to the defendants, or the effects of said defendants in its hands.

By consent of parties, this suit was transferred to the circuit court of Kanawha county. At a term of said court, held in June, 1873, the plaintiff and the garnishee came, by their attorneys, and neither party desiring a jury, by consent, the court in lieu of a jury, proceeded to try the issue joined upon the answer of said garnishee, and the suggestion made upon the record, by the plaintiff, and having heard all the evidence, the court found the issue for the plaintiff, and that at the time the attachment was served upon the garnishee, it had in its possession, funds of the defendants, M. Healey & Co., liable to said attachment, sufficient to discharge the plaintiff's judgment; and thereupon, the said garnishee moved the court to set aside the said finding, and award a new trial, upon the ground that the same was contrary to the law and evidence ; which motion was overruled by the court. And thereupon, the court proceeded to render judgment against the said garnishee for the sum of $282.01, with interest and costs, and $15, statute fee allowed by law. And thereupon the garnishee, the Chesapeake and Ohio Railroad Company, tendered a bill of exceptions, which is signed and made a part of the record, and setting forth all the evidence in the case. From this judgment an appeal is taken to this Court.

Is there error in this judgment, as seen from an examination of the evidence, and under the law, is the question now submitted for determination here. The fifth section of chapter one hundred and six of the Code prescribes how an attachment may be levied, and that any person designated, "as being indebted to, or having in his possession, the effects of the defendant," may be summoned

to appear and answer. The ninth section provides that the plaintiff shall have a lien from the time of levying such attachment, or serving a copy thereof upon the personal property, choses in action and other securities of the defendant against whom the claim is, in the hands of, or due from the garnishee, &c. The sixteenth section provides that when it is suggested, that full disclosure has not been made by the garnishee, the court shall cause a jury to be empanelled, without any formal pleadings, "to inquire as to such debts and effects."

Under this last section, the court, (a jury being waived,) proceeded to make the inquiry therein directed, to-wit: as to such "debts and effects."

Looking now at the evidence on the part of the plaintiff, we find that the plaintiff introduces the depositions of two witnesses, Nicholas Mason and Jonn C. Ruby, who prove that certain claims or accounts due to them from M. Healey. & Co., the defendants, were paid to them by Cabell Breckenridge, on the 20th day of January, 1871, which payments were thus made about twelve days after the service of the attachment on the garnishee. While it appears that said Breckenridge was a resident engineer on the work of the garnishee, it is not shown that he made these payments as the disbursing agent of the Company, or under its authority, or by its direction; and especially, it does not appear that he made these payments out of any moneys or funds recognized or admitted by the Company to be in its hands, as due and owing to the defendants, M. Healey & Co. On the contrary, any presumption to this effect is repelled by a statement made in a letter of said Breckenridge, dated on the 12th day of December, 1871, and addressed to the counsel of the plaintiff: he says, "you are mistaken in supposing that this company considers itself liable for the debts of the firm of M. Healey & Co., formerly contractors on section one hundred and twenty-one." This letter then proceeds further to indicate how the money

arising from the final estimate of the work done by Healey & Co., will be used in the payment of their debts. But this action, on the part of the Company, under the previous statement contained in the letter, must be regarded as purely voluntary, and not proceeding from what was regarded onits part, as any legal obligation. This is all the evidence bearing upon the inquiry, directed by the statute, introduced by the plaintiff; and we do not see that it is of sufficient weight so justify the judgment of the court.

On the part of the garnishee, the deposition of Cabell Breckenridge is introduced, who says that Healy & Co. abandoned their work on 15th of November, 1871 ; had executed no release for their final estimate ; that if they had complied with their contract, there would have been due them something under $1,000 that the Company had tried to re-let the work. An extract from the contract between the garnishee and M. Healy & Co. is also introduced, and the witness Breckenridge says that if Healy & Co. had complied with this contract, there would have been due them something under $1,000. The evidence does not show of what this sum of little less than $1,000 consists, nor is the fact very material ; we infer, however, from the terms of the contract, and the evidence, that it consists of the amount reserved by the company upon the monthly estimates, and the value of the work done from the first to the fifteenth of November. The contract contains the following provisions in substance : that on or about the first day of each month, during the progress of the work, an estimate shall be made of the value of the work done, and ninety per cent. thereof (if the amount due on said estimate shall exceed $300) paid to the contractor, and upon the completion of the entire work a final estimate shall be made, and the balance appearing due shall be paid to the contractor, upon his giving a release to the company from all claims or demands growing in any manner out of the agreement; that if the contractor shall fail to pay the wages of the laborers for any month, that the engineer

may provide for their payment out of the estimate for that month; that the work embraced in the contract shall be commenced within ——— days from the date, and prosecuted with such force as the engineer shall deem adequate to its completion within the time specified; that if the contractor shall refuse or neglect to prosecute the work with a force sufficient in the opinion of the engineer, for its completion within the time specified, the engineer or agents of the Company may proceed to employ such a number of workmen, &c., as may in his opinion be necessary to insure the completion of the work within the time limited; pay all persons so employed, and charge over the amount so paid to the contractor, as for so much money paid to him on the contract; or the engineer may, at his discretion, for any omission or neglect on the part of the contractor, declare the contract, or any portion or section, abandoned, which declaration and abandonment shall exonerate the Company from any and all obligations and liabilities under the contract; and that the reserve per centage of ten per cent. upon any work done by the contractor, or as much thereof as, in the judgment of of the chief engineer, as will be necessary for the complete indemnity of the Company may be retained forever by said Railroad Company. This contract and the deposition of Breckenridge present all the evidence on the part of the garnishee. The evidence of the witness Breckenridge, that the defendants had abandoned the work, and that if they had complied with their contract, there would have been due to them something under $1,000, certainly does not prove any indebtedness on the part of the garnishee at the time of the service of the attachment. This can hardly be pretended. How then does this matter stand under the *provisions of the contract hereinbefore cited*, is the only remaining question? As before observed, the inquiry directed by the statute, under the suggestion of the plaintiff is, as to "such debts and effects," as may be in the hands of the garnishee. Were there any debts or effects in the hands or this Company,

due or belonging to the defendants under this contract on the 8th of December, 1871? We have seen what the provisions of the contract are, and that the defendants abandoned the work. Upon such abandonment or failure, the Company was at liberty to employ such a number of workmen, laborers, &c., as might be necessary to insure the completion of the work within the time limited, and pay all persons so employed, and charge the amount so paid to the contractor. And if the contractor failed to pay the laborers for any month, the Company could pay the same out of the monthly estimate due to the contractor; or at its discretion, the Company could proceed, through its engineer, to declare the contract abandoned, &c. These provisions indicate the relations between the garnishee and the defendant when the order of attachment was served; under these relations, is there such an indebtedness on the part of the garnishee as is the subject of attachment?

A fundamental principle is, that an attaching creditor can acquire no greater right in attached property than the defendant had at the time of the attachment. If, therefore, the property be in such a situation that the defendant has lost his power over it, or has not yet acquired such interest in or power over it, as to permit him to dispose of it adversely to others, it cannot be attached for his debt. Drake on Attachment, section 245 and cases there cited. Again the debt from the garnishee to the defendant, in respect of which it is sought to charge the former, must, moreover, be absolutely payable, at present, or in future, and not dependent on any contingency. If the contract between the parties be of such a nature, that it is uncertain and contingent, whether anything will ever be due, in virtue of it, it will not give rise to such a credit, as may be attached; for that cannot properly be called a debt, which is not certainly, and at all events, payable, either at the present, or some future period. So, where a contract existed between the garnishee and the defendant, by which the defendant

was to be employed by the garnishee in a manufactory, for a salary, and was to deposit with the garnishee $300 to indemnify him against loss in the business, and upon dissolution of the contract, so much of the sum deposited as should not be required to indemnify the garnishee against loss was to be repaid to the defendant, *it was held* to be uncertain and contingent, when the garnishee was summoned, whether the defendant would ever be entitled to recover the $300 deposited, and that therefore the garnishee was not liable. Drake on Att., section 551 and cases there cited. The principle, thus stated, is illustrated and appled in the case of *Baltimore and Ohio Railroad Co. v. Gallahue's Admr.*, 14 Gratt., 563. In that case, by the terms of the agreement, monthly estimates of the work to be done, by the contractor, were to be made up to the 20th of each month, when they are considered due. As the price of the work done by the contractor after the 20th may be forfeited to the company for several causes, before the 20th of next month, no debt is due from the company to the contractor, until the 20th arrives: and therefore an attachment being served on the company on the 14th of the month, there is nothing then in its hands, due to the contractor, which may be attached, though in fact no forfeiture occurs, and on the following 20th of the month, the amount of the estimate may be due. Judge Samuels, delivering the opinion of the court says, in that case, "the performance of labor by Crowley (the contractor) for the garnishee, after the 20th of December, 1851, and before 14th of January, 1852, did not of itself put the garnishee in the condition of debtor to Crowley;" for, he adds, by the "terms of the contract, if Crowley should not well and truly, from time to time, comply with and perform all the terms therein before stated and stipulated, on his part, in manner and form and within the time therein mentioned, (after reciting other provisions of the contract not necessary here to repeat) the chief engineer should have power to annul the contract, if he saw fit to do so, when

the agreement on the part of the company should become null and void, and the unpaid part of the value of the work done should be forfeited to the use of the company. Now it will be observed that the attachment, in this case, was held to be of no validity, not because the contract had been annulled, and become void, and the value of the contractor's work forfeited to the company; for these things never did occur, but simply because provisions to· that effect were .contained in the contract, which might, owing to the failure of the contractor, be enforced against him. For the court says, "Thus, at the time of service of the attachment, 14 January, 1852, it was, (owing to the terms of the contract thereinbefore stated) uncertain and dependent upon future events, whether any amount whatever would be due for labor performed between the 20th of December and 14th of January." It thus appears, that simply because of the existence of these terms or provisions in the contract, and not because of their enforcement in any way, the attachment was not operative against the company at the time of its service.

In the contract under consideration here, it is provided, that if the contractor fail in performing the stipulations of the agreement, on his part, in the particulars therein stated, the Company may proceed to do the work, and charge over the amount to the contractor; or, through its engineer, declare the contract abandoned, and the same shall thereby become void, and, and the reserved per centage of ten per cent. upon any work, &c., or as much thereof, as in the judgment of the chief engineer will be necessary for the complete indemnity of the Company, may be forever retained by said Company. Such in substance are the provisions of the contract here, and as there is [no evidence in the record showing that the same has ever been declared abandoned by the Company, and rendered void in any way, it was a subsisting contract between the parties at the time of the service of the attachment. Consequently it was then uncertain and dependent upon the future action of the Company, under

the provisions of the contract, whether there ever would be anything due to the contractor, for the work done during the month of November. Owing to his failure to fulfil the contract, the Company might incur more expense than his work was worth, in having it finally completed, and having the amount charged over to him. On the other hand, the Company was at liberty, at that time or afterwards, to declare the contract abandoned, and rendered void, and so far as we can know, the reserve per centage of ten per cent. then to be retained by the Company, might not be adequate, or more than adequate, for its complete indemnity. In either view of the possible action of the Company, under the terms of the contract, the value of the work done by the defendants M. Healey & Co., or the amount of estimates remaining in the hands of the Company, do not seem to have been properly the subject of the attachment, at the time of its service.

The subsequent voluntary course of the Company, in paying certain debts of the defendants cannot change the legal effect of the attachment, in giving it a force, which it did not have at the time of the service.

There is still another view of this proceeding. The contract provides that monthly estimates shall be made about the first of each month, during the progress of the work, of the value of the work done, of which ninety per cent. shall be paid to the contractor, leaving ten per cent. in the hands of the Company, and upon the completion of the entire work, a final estimate should be made, and the balance appearing due paid to the contractor, upon his giving a release to the Company from all claims or demands growing out of the agreement.

In the case of *Hennessy v. Farrell*, 4 Cush. (Mass.) 267, a railroad contract contained a similar provision, so far as the making of monthly estimates, and the retaining of a certain amount, and the making of a final estimate upon the completion of the entire work, with that con-

48

1874.
January Term.

Strauss
v.
Railroad Co.
tained in the contract here; the facts also were similar to the facts in the case before us, as to the work of the contractor, for a part of a month, and his failure to proceed therewith; and it was sought there, as here, to subject any funds in the hands of the Company, or its trustees, to the payment of a debt due by the contractor. Chief justice Shaw said, "as to part of a month's work, not completed, nothing had been earned. By the terms of the contract, it was entire for each month, and unless the work was continued until the end of the month, the the defendants were not entitled to have an estimate made by the engineer.

As to the one quarter part of the nominal amount earned in former months, (referring to the reserved amounts,) it was payable only upon the completion of the entire work contracted to be done, and as this never was done, this quarter part, therefore, never became a debt due, which ought to be charged by the "trustee process." Applying these views to the case in hand, there was nothing earned by the defendants for the work done in the month of November, and the reserved monthly per centage remaining in the hands of the Company, never became a debt which could be charged under the attachment.

We have carefully endeavored to consider the suggestion of counsel, that the garnishee in this case, is estopped from setting up defence to this order of attachment. We have failed to see, however, in the evidence, any act of the Company, which misled the plaintiff to his prejudice, or caused him to waive, to any extent, his rights under the process taken. The Company was informed by the plaintiff through his counsel, on the third day after the service of the process of attachment, by a letter addressed to its agent, that he would "release the same and dismiss the suit, when the debt and costs of said suit were paid, but not otherwise." The Company has done nothing to induce him to pursue a different course. We

see no room for applying the doctrine of estoppel in the present case.

For these reasons, the judgment rendered against the Chesepeake and Ohio Railroad Company, on the 16th day of June, 1873, is set aside and reserved, with costs to the appellant, and this Court proceeding to render such judgment as the court below ought to have rendered, doth adjudge and order, that the Chesapeake and Ohio Railroad Company, be discharged from all claim or liability to the plaintiff, Samuel Strauss, by reason of the order of attachment in the proceedings mentioned, and recover from said plaintiff his costs in the circuit court expended, and that this order be certified to the circuit court of Kanawha county.

Haymond, President, and Moore, Judge, concurred. Absent Hoffman, Judge, by reason of sickness.

JUDGMENT REVERSED.