ANNABELLE MILLS SCRUGGS *v.* JEFFERSON STANDARD LIFE
INS. CO. *et al.*

(No. 9324)

Submitted October 14, 1942. Decided November 24, 1942.

*Brown, Jackson & Knight,* for appellant.
*Mohler, Peters & Snyder,* for appellee.

RILEY, JUDGE:

In this chancery suit instituted by Annabelle Mills
Scruggs in the Circuit Court of Kanawha County against
Jefferson Standard Life Insurance Company and Claude

G. Scruggs, plaintiff seeks to subject the cash surrender value ($1,977.98) of a life insurance policy issued by defendant insurance company upon the life of Claude G. Scruggs, in partial satisfaction of two judgments against him for accrued alimony and costs. The trial court held that by virtue of the judgments and executions issued thereon plaintiff "has a lien on the policy of life insurance aforesaid to the extent of the Cash Surrender Value thereof, and that said executions are liens upon the right of the defendant Claude B. Scruggs, to avail himself to the Cash Surrender Value of said policy of life insurance", appointed a special commissioner to make demand upon the insurance company for such value, and, the special commissioner having reported the refusal of the insurance company to comply with such demand, rendered judgment in favor of plaintiff against the insurance company for such sum, with interest and costs. It complains here of such decretal judgment.

The policy of insurance involved herein names the children of plaintiff and defendant as beneficiaries but provides insured may change his beneficiary; and insured "may, without consent of the beneficiary, receive every benefit, exercise every right and enjoy every privilege conferred upon the Insured by this Policy." The provision of the insurance contract which gives rise to the present controversy reads thus:

> "After two full years from the date hereof, if there shall be no indebtedness to the Company, the Insured shall, within one month (not less than 30 days) from the due date of any premium upon the second, be entitled to a surrender value—in cash, non-participating paid-up insurance, or non-participating extended insurance—as set forth in the table below."

Insured has made no application or request for either the cash surrender value, non-participating paid-up insurance or for non-participating extended insurance. His whereabouts, both at the inception of suit and at the hearing, were unknown to plaintiff, and an order of publication was entered against him.

Defendant insurance company, denying that there is any sum due Scruggs under the policy, asserts that the executions issued upon the judgments above mentioned are not liens upon either the policy or any proceeds or benefits thereof and that by virtue of Code, 33-3-34, plaintiff is barred from reaching the proceeds of the policy. It also denies the right of the trial court to appoint an officer to exercise the rights of defendant Scruggs under the policy in the absence of personal service of process upon him.

The crux of the insurer's challenge of the decretal judgment which it now seeks to reverse is jurisdictional; and because the record discloses that it does business in numerous states, the jurisdictional issue is a vital one.

The position of plaintiff is that the insured's right to demand the cash surrender value is "a res, a property in the true sense of the word", and that by virtue of her executions, plaintiff has a lien on this property which an officer of the court should be allowed to exercise for her. The trial court adopted plaintiff's position. Did it err in so doing?

The divergence of views exchanged by the litigants relates to the basic question of whether the decree of the trial chancellor declaring the executions to be liens upon Scruggs' right to avail himself to the cash value of the policy is one operating *in personam* or *in rem*. In Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 1, Sections 134, 135, the author rejects the argument that a court of chancery operates only *in personam* and comments that "the decrees of a court of equity may be made to operate *in rem* to the same extent and in the same manner as judgments at law." Likewise, a proceeding against a person, in respect to property, as distinguished from one against property or a person only, has been defined as a proceeding *quasi in rem*. Freeman on Judgments, 5th Ed., Vol. 3, page 3124. This text writer notes the necessity, whether the *res* is real or personal property, for its being within the territorial jurisdiction of the court. Freeman, *idem*, page 3142.

In *Tennant's Heirs* v. *Fretts,* 67 W. Va. 569, 68 S. E. 387, 388, 29 L. R. A. (N. S.) 625, 140 Am. St. Rep. 979, although personal service upon defendant had not been had, the Court upheld jurisdiction of the trial court in a suit to remove cloud and quiet title. The following language appears in the opinion:

> "We can not say that equity is impotent in the present case to grant relief, simply because defendants are beyond the jurisdiction of the court and can not be compelled to obey its process. Equity can remove a cloud from title to land within the court's jurisdiction without having before it the person of defendant. It has power to make a decree which may operate upon the subject matter of the suit, notwithstanding such a decree is, in its nature, *in rem.*"

The distinction between decrees *in personam* and *in rem* has been the subject of judicial scrutiny and comment in numerous cases before this Court. Where a decree which operated *in personam* has received approbation, jurisdiction of the person of the defendant has been present. Illustrative of such cases are *Woodcock* v. *Barrick,* 79 W. Va. 449, 91 S. E. 396; *State* v. *Fredlock,* 52 W. Va. 232, 43 S. E. 153, 94 Am. St. Rep. 932. In those instances where the defendant has been without the jurisdiction of the courts of the State and the decree has operated *in rem,* the property involved has been within the jurisdiction of the court entering the decree. See *Tennant's Heirs* v. *Fretts, supra; Birch* v. *Covert,* 83 W. Va. 752, 99 S. E. 92; *Patton* v. *Eicher,* 85 W. Va. 465, 102 S. E. 124. The rationale of these latter cases is that the decree affects the property itself, and title thereto passed or is released, under Code, 55-12-7, by a deed of writing executed by a commissioner appointed by the court. Since jurisdiction of either the property or the person of the defendant is essential to entry of a valid decree, we must appraise the plaintiff's contention that the right to elect under the options offered by the policy issued upon Scruggs' life is property within the trial court's jurisdiction, to which the lien of the judgments could, and did attach, in the light of the

fact that defendant Scruggs is a nonresident who has not been served personally with process, and has made no appearance either in the trial court or before the bar of the appellate court.

Code, 38-4-8, provides that an execution creates a lien from the time of delivery to the executing officer "upon all of the personal property, or the estate or interest therein, owned by the judgment debtor at the time of such delivery of the writ, or which he may acquire on or before the return day thereof." The instant proceeding was brought under Code, 38-5-20, the pertinent portion of which reads as follows:

> "For the recovery of any personal property or any claim on which a writ of fieri facias or an execution is a lien under this article, or the enforcement of any liability in respect to any such property, or for the enforcement of any debt or liability of any person to the judgment debtor, on which the writ of fieri facias or execution is a lien, a suit may be maintained either at law or in equity, as the case may require."

The question of the rights of creditors to the proceeds of a life insurance policy has been the subject for determination in numerous instances and the general rule is that, in the absence of special equities, creditors of the insured have no interest in the proceeds of a policy designating a special beneficiary. Cooley's Briefs on Insurance, 2nd Ed., Vol. 7, page 6494. In this jurisdiction the essence of the general rule, in the absence of an intent to defraud creditors, has been embodied in a legislative enactment. Code, 33-3-34. It is contended by appellee that she is not a "creditor" contemplated by the statute or the general rule, and in support of her assertion we are directed to *Smith* v. *Smith,* 81 W. Va. 761, 95 S. E. 199, 201, 8 A. L. R. 1149, in which it is stated that a decree for alimony is more than a mere decree for money. "The money decree is a means to an end, the real purpose of the decree, maintenance." This contention is material only if the proceeds (cash surrender value) of the policy were properly a subject matter for adjudication by the trial chancellor.

Since the policy itself, issued to Scruggs, has not been seized under the executions and was not in possession of the litigants appearing in the suit, if there was any *res* at all within the court's jurisdiction, it must be Scruggs' right of election under the terms of the policy. In a case which did not involve insurance contracts, we said that "an attaching creditor can acquire no greater right in attached property than the defendant had at the time of the attachment". *Strauss* v. *Railroad Co.,* 7 W. Va. 368, wherein the court stamped as unattachable a contract held to be uncertain and contingent. On the other hand *Mountain State Motor Co.* v. *Solof,* 97 W. Va. 196, 124 S. E. 824, is authority that a *fieri facias* is a lien upon a contractual indebtedness due the execution debtor, for which a verdict has been returned in his favor". While these cases are, of course, not decisive of the present issue, they do reflect the necessity for a *res in esse*—a thing certain—for the creation of a lien.

In Appleman, Insurance Law and Practice, Section 1756, the rule is stated that, "The right to receive the cash surrender value of the policy has been stated to be personal to the insured—or, perhaps, more accurately, that such a right cannot be exercised by persons other than those designated in the policy." The text recognizes, however, the right of a pledgee under certain conditions or of an assignee to such cash value. To reflect the reasoning for the general rule, as stated, we quote from *Isaac Van Dyke Co.* v. *Moll,* 241 Mich. 255, 217 N. W. 29, 30, 57 A. L. R. 692:

> "But the present right of the insured to money under the policy and the liability of the company is not absolute. The right to receive it is one personal to the insured, and he alone may exercise it. It may not be forced upon him by the insurer. The obligation to pay does not become due at or within a time fixed by the policy, but it rests upon the happening of an event not measured by a time limit, and which may or may not transpire."

In *Drysch* v. *Prudential Ins. Co. of America*, 287 Ill. App. 68, 4 N. E. (2d) 530, 532 (1936), it was said that:

"No debt is created until the insured has the right to sue for the money. The option of the insured to elect to take the surrender value is not an evidence of debt until the option is exercised."

See also *Bethards* v. *Metropolitan Life Ins. Co.*, 287 Ill. App. 7, 4 N. E. (2d) 257. Likewise, in *First National Bank of Burkburnett* v. *Friend*, 23 S. W. (2d) 482, 483, the Court of Civil Appeals of Texas stated: ·

"It is also well settled that, in order to hold the garnishee liable for any indebtedness which he may owe to the original defendant, such indebtedness must be due, and must be certain and unconditional."

See also *Boisseau, etc.* v. *Bass, Admr.*, 100 Va. 207, 40 S. E. 647, 57 L. R. A. 380, 93 Am. St. Rep. 956; *United States* v. *Massachusetts Mutual Life Ins. Co.* (C. C. A. 1), 127 F. 880; Couch Cyc. of Insurance Law, Vol. 8, pages 6422, 6433, wherein it is stated that "an insured who has not undertaken to exercise an option had by him has no interest subject to execution".

We are persuaded by the reasoning in the cases cited and therefore conclude that there was no property within the trial court's jurisdiction upon which its adjudication could operate, and hence its appointment of a special commissioner and the demand of that officer upon the insurance company were not warranted. We note that in some of the cases cited, it does not appear whether the insured was personally amenable to process, as was true in *Foulks* v. *Foulks*, 49 Ohio App. 291, 297, 197 N. E. 201, wherein the Ohio court exercised its authority to require the insured, in a divorce proceeding, to convert the cash value of a policy on his life into proceeds to be paid to his wife as alimony. That situation is not before us. See *Mutual Life Ins. Co. of N. Y.* v. *Franck*, 9 Cal. App. (2d) 528, 50 P. (2d) 480.

We have examined the other cases cited by appellee in support of her contention that the right to obtain the cash

surrender value is property to which the lien of an execution will attach. In *Mahood* v. *Maynard*, 114 W. Va. 385, 171 S. E. 884, the insured had died and plaintiff, his creditor, sought to recover from the proceeds of his life insurance policies the amount due her on a loan effected by reason of insured's representations to plaintiff that insured would continue to carry the insurance payable to his estate; and this Court, concluding that a subsequent change of beneficiary constituted constructive fraud against plaintiff, measured her recovery by the cash surrender value. In *Cohen* v. *Samuels*, 245 U. S. 50, 38 S. Ct. 36, 62 L. ed. 143, the trustee was held entitled to insurance policies on a bankrupt's life, though payable to specified relatives, or to the cash surrender value because of the provisions of the bankruptcy statute then in force by which all powers which the bankrupt might have exercised for his own benefit became vested in the bankrupt's trustee. Moreover, jurisdiction over the person of the bankrupt was present.

The reasoning employed by the Missouri court in *Industrial Loan & Investment Co.* v. *Missouri Life Insurance Co.*, 222 Mo. App. 1228, 3 S. W. (2d) 1046, emanates from the premise that since courts have recognized that an option may be exercised by an assignee or pledgee of a policy, "the right to exercise the option is not purely personal." We are not persuaded by such reasoning, for the assignee or pledgee's right is created by an affirmative act of the insured himself whereby, in legal contemplation, he intends another to exercise what was his right initially. The question for determination was whether the cash surrender value was subject to attachment and sale under an execution. While affirming the contention that the "surrender value of this policy constituted 'property' which would sustain an attachment", the court denied that it was property of such a nature that it could be sold. It held that it could "be collected by an officer of the court and applied to the creditor's debt". It is significant that the court had before it the policy itself—a *res* lacking herein. *Biggert* v. *Straub* et al., 193 Mass. 77, 78 N. E. 770, 118 Am. St. Rep. 449, is distinguishable from the in-

stant case for the Massachusetts statute (quoted in *Alexander* v. *McPeck*, 189 Mass. 34, 75 N. E. 88) provided:

"* * * any property, right, title or interest, legal or equitable, of a debtor, . . . which cannot be reached to be attached or taken on execution in an action at law, although . . . the property sought to be reached and applied . . . cannot be reached and applied until a future time or is of uncertain value, if the value can be ascertained by sale, appraisal or by any means within the ordinary procedure of the court."

Moreover, in the *Biggert* case, the policy was in possession of the insurer, a party to the suit in a Massachusetts corporation.

For the reasons assigned, we reverse the decretal judgment entered against the insurance company, as well as the decree entered on June 21, 1941, establishing the lien and appointing a special commissioner to make demand for the cash value, and remand this suit with directions that plaintiff's bill of complaint be dismissed.

*Reversed and remanded with directions.*