**In the Matter of Clarence William WHITE, Bankrupt.**

**No. 3783–E.**

United States District Court
N. D. West Virginia.
Aug. 1, 1960.

**610**

Mary Frances Brown and G. Norris Watson, of Stathers & Cantrall, Clarksburg, W. Va., for petitioner.

Jack R. Nuzum, Elkins, W. Va., trustee, pro se.

CHARLES F. PAUL, District Judge.

This matter is here upon the petition of the Penn Mutual Life Insurance Company to review and correct an order of the Referee in Bankruptcy entered April 16, 1959, upon a petition by the Trustee therefor, requiring the insurance company to turn over to the Trustee the sum of $1,295.88 as part of the assets of the bankruptcy estate, which sum the Referee found to be the cash surrender value as of the time of the filing of the bankruptcy petition, of a paid-up policy of life insurance upon the life of the bankrupt. The bankrupt's wife is the primary beneficiary of the policy, the face amount of which is $2,000. The bankrupt, as insured, had retained the right to change the beneficiary and all other rights pertaining to ownership of the policy. The bankrupt had refused to sign a "Cash Surrender Request" which the insurance company demanded before complying with the Trustee's original demand for the cash surrender value. The bankrupt had been allowed his $200 statutory exemption out of other scheduled property.

The insurance company contends: first, that the cash surrender value of the policy does not pass to the Trustee by virtue of the Bankruptcy Act because it is exempt to the bankrupt under the provisions of W.Va.Code, Ch. 33, Art. 6, Sec. 27(a) (Michie Code § 3397(a)) [1];

1. "Life Insurance Proceeds Exempt From Creditors.—(a) If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance ance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance or executors or administrators of such insured or the person so effecting such insurance, shall be entitled to its proceeds and avails against

second, that the Referee has incorrectly determined the amount of the cash surrender value and has disregarded, and failed to give effect to the lien of, the amount of an unpaid policy loan effected by the bankrupt.

The Trustee's contentions with reference to the question of his entitlement to the remaining cash surrender value, whatever that may be, are two: first, that if the West Virginia statute is an exemption statute it cannot be constitutionally applied in this case because W. Va. Constitution Art. VI, Sec. 48 [2] limits the legislative power to provide for exemptions of personal property to property "to the value of two hundred dollars"; second, that, even if the code section were constitutional as an exemption statute, the language of the Act entitling the beneficiary to the "proceeds and avails against the creditors * * * of the insured" refers to the death benefits payable upon the maturity of the policy upon the death of the insured and not to any of its values during the lifetime of the insured. In both of these contentions the Trustee was upheld by the Referee.

I find myself unable to affirm the Referee's rulings upon either of the questions presented.

 It seems clear that, if the statute, properly construed, exempts values in a life insurance policy which have accrued during the lifetime of the insured from the claims of his creditors, then, unless the statute violates the Constitution of the State of West Virginia, this cash surrender value does not pass to the Trustee by virtue of the Bankruptcy Act. The leading case of Holden v. Stratton, 1905, 198 U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018, expressly holds that, under these circumstances, the bankrupt-

cy court must give effect to the State statute.

In view of the fact that this statute was first enacted in 1929 with amendments in 1951 and 1957 which are not here material, it is somewhat surprising to find that the questions here presented appear to be matters of first impression in West Virginia.

 Let us consider first the problem of whether the statute extends its protection to the values of insurance during the lifetime of the insured because, not until we have disposed of this question will we reach the constitutional question.

The Trustee contends that the words "proceeds and avails" in the statute refer only to the "death benefits" payable upon the maturity of the policy by death of the insured and after his death. The argument runs that to hold otherwise would be to provide a debtor with an avenue for depositing his funds, in unlimited amounts, in a species of property which would place it beyond the reach of his creditors, but not beyond his own reach after his discharge in bankruptcy. It is contended that no court should attribute to the legislature a purpose to achieve this unconscionable result unless the language of the statute specifically so provides. This argument overlooks the protection which the legislature has afforded to creditors in paragraph (b) of the section which provides in part "Subject to the statute of limitations, the amount of any premiums for such insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy, * * * ". There is no claim here that any of the premiums for the policy in question were paid in fraud of creditors.

the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person."

2. "Any husband or parent, residing in this State, or the infant children of deceased parents, may hold a homestead of the value of one thousand dollars, and personal property to the value of two hundred dollars, exempt from forced sale subject to such regulations as shall be prescribed by law; * * *."

Admittedly, the West Virginia statute is a broad one. It places no limitation upon the face amount of the policies which may be held exempt from creditors; it places no limitation upon the annual premiums which may be devoted to the purpose of acquiring such a policy; nor does it limit such policies to ones taken out for the benefit of the insured's family or dependents. Its only limitation is that the policy must be in favor of a person other than the insured or assigned to such other person. Nevertheless, it would seem that the legislative policy is to provide citizens of West Virginia an avenue for protecting and providing for the welfare of those who are their special concern, without risk that their purpose may be frustrated by seizure at the instance of future creditors. It cannot successfully be contended that, absent constitutional prohibition, this is not a proper legislative purpose. It is not the province of the courts to criticise the propriety of the legislature's actions or to limit any clearly expressed purpose by strained construction. To limit the meaning of the words "proceeds and avails", to that contended for by the Trustee, would seriously hamper the accomplishment of the expressed legislative purpose. Seizure and appropriation of the values of life insurance built up during the lifetime of the insured by his creditors would frustrate the purpose just as much as would the seizure of the death benefits by creditors of his estate after his death.

The only authority cited in support of the Referee's ruling is the case of In re Moore, 1909, 173 F. 679, 680 decided by the District Court for the Eastern District of Tennessee. This case involved a right of the Trustee in Bankruptcy to the cash surrender value of two insurance policies on the life of the bankrupt, one of which was made payable to the bankrupt himself, and the other to his estate. It is to be noted that under the West Virginia statute neither of these policies would be exempt. The court, however, considered two sections of the Tennessee code which were enacted in 1846. The first, § 2294, provides, "A life insurance effected by a husband on his own life shall inure to the benefit of the widow and next of kin, to be distributed as personal property, free from the claims of his creditors." The second, § 2478, provides, "Any life insurance effected by a husband on his own life shall, in case of his death, inure to the benefit of his widow and children; and the money thence arising shall be divided between them according to the law of distributions, without being in any manner subject to the debts of the husband, whether by attachment, execution or otherwise." The court pointed out that the first of these code sections is in the chapter of the code entitled "Of the Administration of Estates", and that the second section referred specifically to the death of the insured. It concluded that both code sections were limited in their application to the death benefits collected after the death of the insured and had no application to the cash surrender values. The case of In re Stansell, 8 F.2d 363, 364, decided by the District Court for the Western District of Tennessee in 1925, involved the right of a Trustee in Bankruptcy for a Tennessee bankrupt to the cash surrender value of policies on the life of the bankrupt in which his wife was the named beneficiary. The court considered the two code sections cited in In re Moore and also another code section, § 2265, passed in 1875. This section provides: "When policies of insurance are effected by any person on his life, for the benefit of his wife * * the creditors of the person thus insuring shall have no claim on the proceeds of the policy, and the same shall inure to the persons for whose benefit the insurance was effected." Applying this section, the court found that the cash surrender values were exempt, saying, at page 364, "In the opinion of this court the cash surrender value of a life insurance contract is as much 'the proceeds of a policy,' as the money due on the policy after the death of the insured. Thus, without going into the reported cases in Tennessee, the act of 1875, clearly ex-

empts the surrender value of the policies in the instant case from the claim of the trustee of the bankrupt's estate." The court in its opinion severely criticises In re Moore, perhaps unjustifiably.

The case of In re Beckman, D.C.1943, 50 F.Supp. 339 considers a factual situation identical with ours and a statute of the State of Alabama, Code 1940, Tit. 7, § 624, which is nearly identical with the West Virginia statute. The court points out that the Alabama statute was taken from the New York statute, Insurance Law, § 55–a, and discusses leading cases from both New York and New Jersey, N.J.S.A. 17:34–28, 29. In a well-reasoned opinion it concludes that the cash surrender value is exempt to the bankrupt. It mentions the liberality with which these exemptions should be treated and considers and refutes, the contention that the statute provides an avenue of escape for debtors.

In connection with the statement that the question of the applicability of the West Virginia Insurance Exemption Statute to the cash surrender value of policies is a matter of first impression in West Virginia, it should be noted that this question was presented, in a manner of speaking, in the case of Scruggs v. Jefferson Standard Life Ins. Co., 1942, 125 W.Va. 89, 23 S.E.2d 74, 76. This was a case begun by attachment in which a divorced wife attempted to reach the cash surrender value of a policy belonging to her non-resident ex-husband by attachment in order to satisfy a decree of alimony which she held against him. The court decided that the right to demand a cash surrender value of life insurance is not a *res*, subject to attachment, and that, therefore, the court had no jurisdiction to entertain the divorced wife's suit. The court notes, however, that the insurance company had raised the question of the exemption statute and stated "The question of the rights of creditors to the proceeds of a life insurance policy has been the subject for determination in numerous instances and the general rule is that, in the absence of special equities, creditors of the insured have no interest in the proceeds of a policy designating a special beneficiary." The court also noted that the plaintiff contended in this respect that she is not a "creditor" contemplated by the statute because an alimony decree for the support of a divorced woman is a special type of obligation superior to the ordinary claims of creditors. It was not even suggested in the case that the exemption statute does not extend to cash surrender values.

Since the leading case of Holden v. Stratton, supra, there have been a host of cases construing statutes of various states and unanimously holding that the words "proceeds" or "proceeds and avails" when used in life insurance exemption statutes comprehend the protection of cash surrender values and other values built up during the life of the policies as well as the death benefits. Illustrative of these cases are the following: In re Whelpley, D.C.N.H.1909, 169 F. 1019; In re Churchill, 7 Cir., 1913, 209 F. 766; In re Weick, 6 Cir., 1924, 2 F.2d 647; Dussoulas v. Lang, 3 Cir., 1928, 24 F.2d 254; In re Messinger, 2 Cir., 1928, 29 F.2d 158, 68 A.L.R. 1205; Smith v. Metropolitan Life Ins. Co., 3 Cir., 1930, 43 F.2d 74; Schwartz v. Holzman, 2 Cir., 1934, 69 F.2d 814; In re Beech, D.C.Mass.1934, 8 F.Supp. 1910; In re Fogel, 7 Cir., 1947, 164 F.2d 214, certiorari denied Banks v. Fogel, 333 U.S. 862, 68 S.Ct. 741, 92 L.Ed. 1141.

■■ Turning now to the constitutional question, we have noted that there are no West Virginia cases directly in point. However, it might be well to point out that in the very early case of Moran v. Clark, 1887, 30 W.Va. 358, 4 S.E. 303, the court was considering the homestead exemption. After noting that the constitutional provision was not self-executing the court said, 30 W.Va. at page 377, 4 S.E. at page 314: "It simply imposed on the legislature the duty to pass an act whereby a homestead of not less than $1,000 might be claimed by any husband * * *." (Emphasis supplied). While the point was not ·directly involved in the case, the language

does indicate that the court, even in this early day, viewed the dollar amounts in the constitutional provision as minimum amounts, not as maximum amounts.

In support of his ruling that the life insurance exemption statute violates the quoted section of the Constitution, the Referee cites two cases: Hickman v. Hanover, 4 Cir., 1929, 33 F.2d 873, and In re Cunningham, D.C.E.D.S.C.1926, 15 F.2d 700. In the Hickman case the court had to deal with a constitutional provision of the State of Maryland providing as follows: "Laws shall be passed by the General Assembly to protect from execution a reasonable amount of the property of the debtor, *not exceeding* in value the sum of five hundred dollars." Const. art. 3, § 44. (Emphasis supplied.) The act of the Legislature provided an exemption of one hundred dollars in property, "as well as all money payable in the nature of insurance,". The bankrupt claimed as exempt five hundred dollars of the cash surrender value of insurance on his life, and the court allowed him that exemption.

The Cunningham case arose from South Carolina. The Constitution provided for an exemption of a homestead to the value of one thousand dollars and personal property to the value of five hundred dollars. It then extended the homestead exemption to husband and wife jointly and the section concluded with the following proviso [15 F.2d 703]: "Provided further, that there shall not be an allowance of more than $1,000 worth of real estate and more than $500 worth of personal property to the husband and wife jointly." Const. art. 3, § 28. In addition to his five hundred dollar exemption of personal property the bankrupt tried to claim the cash surrender value of policies of insurance payable to his wife, and the court held that he could not do so. How the case might have been decided, absent the proviso, is problematical.

Of far greater pertinency to the case at hand is the decision in Cooper v. Taylor, 5 Cir., 1932, 54 F.2d 1055, 1057. The Florida Constitution, art. 10, § 1, provided for an exemption of one thousand dollars worth of personal property and a statute provided that the cash surrender values of life insurance policies should be exempt. The Circuit Court of Appeals affirmed a district court order allowing the Florida bankrupt an exemption of one thousand dollars out of personal property and an exemption of the cash surrender value, aggregating about thirty-six hundred dollars, of several policies of insurance on his life, which insurance named his wife as beneficiary. The court held that the constitutional provision is not exclusive and is not a limitation upon statutory exemptions. The court based its holding on two propositions, in the following language: "First, that the constitutional exemption is not exclusive, or a limitation upon legislative power; and, secondly, that life insurance is personal property of such peculiar nature that the constitutional exemption was not intended to apply to it."

It is axiomatic that courts are reluctant to strike down, as unconstitutional, legislation duly enacted in pursuance of a proper legislative purpose, unless the provisions of the Constitution clearly require it. I am not impressed with the argument that rights of creditors are seriously hampered by this legislation. The fact that it has stood in the statutes for some thirty-one years, within which it has undergone two revisions and reenactments, would seem to indicate to the contrary. It seems plain that persons extending credit or lending money to West Virginia citizens, on the strength of investments in life insurance, must realize that they must acquire proper assignments of the policies for their security.

Accordingly, I find that Ch. 33, Art. 6, Sec. 27 of the West Virginia Code, is not an unconstitutional exercise of the legislative powers upon the following grounds and for the following reasons: First, the dollar value of the personal property exemption provided in Constitution Art. VI, Sec. 48, does not place an upper limit of two hundred dollars on such exemp-

tion. The constitutional provision, which was ratified in 1872, does not say whether the dollar value is the minimum or the maximum allowable amount. If then we are obliged to speculate as to what was in the minds of the framers of the Constitution in this respect, would it not be more charitable to ascribe to them the wisdom to have foreseen what has happened to the value of the dollar and to have intended to fix a minimum amount of "bread and butter" money and to leave to the Legislature the determination of what changes should be made in the light of changed circumstances. Second, the words "personal property", as used in the organic law, do not necessarily comprehend the peculiar species of property embodied in the modern life insurance contract. In the ordinary life insurance policy premiums are generally paid, not for the immediate benefit of the insured, but for the protection of his family and dependents in the event of his death. The face amounts payable upon death do not become part of the insured's estate and do not pass to his personal representatives as "personal property". The state has an interest in seeing that these dependents do not become dependents of the state and it is, therefore, in the state's interest for the Legislature to provide that this peculiar type of property be not diverted from its intended use. The amount of the constitutional personal property exemption in and of itself should clearly indicate that the Legislature had in mind the ordinary items of household furniture, trade tools, clothing and "bread and butter" money, not this particular and peculiar kind of property.

While the above rulings render the question moot, it should be pointed out that the record is in an unsatisfactory state with reference to the net amount of the cash surrender value on the bankruptcy date, after deducting the amount due on the policy loan as of that date. If these rulings should be reversed on appeal, the matter should be remanded to the Referee for a proper determination of that net amount.

The order under review is reversed.