**In the Matter of Marvin M. SUMMERS, Bankrupt.**

**No. 5100.**

United States District Court
N. D. Indiana,
South Bend Division.

March 31, 1966.

David B. Weisman, South Bend, Ind., for trustee in bankruptcy.

William A. Thorne and Worth N. Yoder, of Thorne & Yoder, Elkhart, Ind., for bankrupt.

GRANT, Chief Judge.

The bankrupt's voluntary Petition claimed as exempt the cash surrender value of seven life insurance policies

having a net cash value of $4,420.11. Five of these policies designated the bankrupt as both insured and owner, with his wife as the beneficiary. The other two policies insured the lives of bankrupt's daughter and son, respectively, and, the parties agree, do not come within the scope of this Memorandum on the interpretation of the applicable Indiana law.

Section 70(a) (5) of the Bankruptcy Act (11 U.S.C.A. § 110) entitles the Trustee in Bankruptcy to the cash surrender value of life insurance policies which would otherwise be payable to the bankrupt or his estate. However, where a state statute exempts the policies from the debts of the insured person, those policies are put beyond the reach of the insured's trustee, Bankruptcy Act Sec. 6 (11 U.S.C.A. § 24); Holden v. Stratton, 198 U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018 (1905). The resolution of the issue before this Court, therefore, turns upon an interpretation of Indiana's exemption provision relating to life insurance, Burns' Ind.Stat.Ann. § 39–4210:

"* * * All policies of life insurance upon the life of any person, which may hereafter mature, and which have been or shall be taken out for the benefit of, or bona fide assigned to the wife or children, or any relative dependent upon such persons, or any creditor, shall be held, subject to change of beneficiary from time to time, if desired, for the benefit of such wife or children, or other relative, or creditor, free and clear from all claims of the creditors of such insured person; and the proceeds or avails of all such life insurance shall be exempt from all liabilities from any debt or debts of such insured person."

It is conceded by the Trustee that the five policies in question meet the requirements of this statute insofar as the insured is the Bankrupt and the Bankrupt-insured's wife is the beneficiary. The issue here was thus posed by the Trustee in his Brief on Review:

"Under Indiana law as incorporated into the Bankruptcy Act by Section 6 of the said Act, is the cash value of life insurance insuring the life of a bankrupt, wherein the beneficiaries are the wife and/or children of the bankrupt, and in which the bankrupt has retained the powers to change the beneficiary designation, to surrender the policies for cash, to assign the policies or to borrow thereon, an asset exempt from execution or attachment which passes to the trustee in bankruptcy under Section 70(a) (5) of the Bankruptcy Act as of the date of adjudication of the bankruptcy?"

The Trustee contends that these policies had not "matured" and thus could not meet the threshold requirement of the Indiana statute. The Trustee contends that these policies "mature" only upon the death of the insured (or upon an irrevocable designation of beneficiary) and that until the happening of that occurrence, the beneficiary has no interest in the policies, that no right has been vested in the beneficiary prior to the death of the insured. It is suggested, therefore, that Section 39–4210, Burns, supra, has no applicability here and can provide no exemption to this bankrupt.

The Trustee further argued that the word "mature" in the statute must be taken to mean that point in time at which someone other than the Bankrupt-insured has a vested interest in the policy. As already pointed out, this could occur in one of two ways: First, under the terms of a straight life policy, the maturity date is the death of the insured, at which time the beneficiary becomes entitled to the face amount. The insured (the bankrupt) in this case is still alive. Second, a policy may be said to "mature" by an irrevocable appointment of a beneficiary. The Bankrupt-insured in the instant case has at all times retained the right to change his beneficiaries. It was because of these two facts, contends the Trustee, that the policies have not "matured" and thus are not entitled to the protection of the statute. He supports his argument with the policy consideration that if the statute were read any other way, the class of protected persons would include the

bankrupt, thereby entitling him to defraud his creditors by investing in insurance contracts before going into bankruptcy.

The Referee agreed with the Trustee that the policies had not "matured," and thus were not protected by the statute.

■ It is conceded by all concerned that there is no Indiana law interpreting this portion of the statute. Exemption statutes must be interpreted liberally in favor of those for whose benefit they were enacted, Holden v. Stratton, supra; In re Fogel, 164 F.2d 214 (7th Cir. 1947). We do not believe that it is possible to so narrowly construe the phrase "which may hereafter mature" when read in the context of the entire provision, and when considered in the light of the above cases. We do not find that a policy must mature as a condition precedent to the exemption. First of all, if the maturity date is held to mean the death of the insured, then the clear intent of the statute has been frustrated because it would protect only the family of a deceased bankrupt. Furthermore, it follows that such policy could not, in the words of the statute, be "held * * * for the benefit of" the insured's wife and children, because it would have been previously cancelled by the insured's death.

It is equally inconsistent with the language of the statute to say that the beneficiary must have a vested interest in the policy, in terms of an irrevocable appointment. The plain words of the statute that such policies "shall be held, subject to change of beneficiary from time to time, if desired * * * free and clear from all claims of the creditors * * *" make it abundantly clear that the Bankrupt-insured may retain the right to change beneficiaries.

■ We cannot agree with the Trustee's interpretation of the statute. It is our opinion that the phrase "which may hereafter mature," means, not that maturity is a condition precedent to coverage under the statute, but only that the statute will have prospective application. In other words, the statute was meant to apply only to those policies which had not yet matured on the date that this provision was enacted into law. It is parenthetical in form, and not crucial to the determination which we must make here.

In re Fogel, supra, provides no support for the position of the Trustee herein. Fogel recognizes that an ordinary life policy is exempt under Burns' 39–4210, and holds that an incidental endowment feature does not destroy the exemption provided by that statute.

In Fogel, the Bankrupt-insured sought to exempt certain policies which contained endowment features, that is, provisions for payment of the face amount of the policy to the *insured* upon attaining a certain age. An additional beneficiary under the policy was the insured's son, who would be paid the face amount provided the Bankrupt-insured died before maturity date, if the son survived until that same date. The Court first held that *the endowment features did not prevent the policies from being included within the term "life insurance" and therefore were entitled to protection under the statute.* See for a general discussion of this problem 30 A.L.R.2d 751. Additionally, the Court held that the benefit conferred on the son was at least as substantial as that conferred on the Bankrupt-insured, so that, in the words of the statute, the policies were "held for the benefit of" the insured's wife or children. The Court termed this the son's "interest" in the policy. But this could mean no more than that the son was a beneficiary within the meaning of the statute in spite of the fact that the policy was also for the benefit of the Bankrupt-insured. While it is true that in that case, the Bankrupt-insured had no power to change beneficiaries, the son's "interest" in the policy was nevertheless contingent upon the father's death before the maturity date. The Court did not hold that the son's interest depended upon the irrevocable appointment; rather, his interest derived from the fact that he was a true beneficiary. For a case similar to the present one, in which the cash surrender value of a policy was held to fall

within the exemption statute even though the Bankrupt-insured retained the right to change beneficiaries, see In re White, 185 F.Supp. 609 (N.D.W.Va.1960).

 The remaining question is presented: Whether the cash surrender value of these policies constitutes "proceeds or avails" of life insurance within the meaning of the exemption statute. The weight of authority in this country is that the cash surrender value does come within the language just quoted, 1 Collier: Bankruptcy § 6.16. Without intending to be exhaustive, there follows a list of cases which have construed various state statutes to include the cash surrender value within the term "proceeds" or "proceeds or avails": Pearl v. Goldberg, 300 F.2d 610 (2nd Cir. 1962) (finding no magic in the word "proceeds" in the Connecticut statute which would limit it to death proceeds); Schwartz v. Seldon, 153 F.2d 334, 169 A.L.R. 1375 (2nd Cir. 1945) (interpreting New York law); Cooper v. Taylor, 54 F.2d 1055 (5th Cir. 1932) (found that Florida's express exemption of cash surrender value was not unconstitutional); In re White, 185 F. Supp. 609 (N.D.W.Va.1960) (interpreting West Virginia law); In re Beckman, 50 F.Supp. 339 (N.D.Ala.1943) (interpreting Alabama law); Magnuson v. Wagner, 1 F.2d 99 (8th Cir. 1924) (interpreting South Dakota law). The Seventh Circuit has had occasion to construe the Illinois exemption statute, but under Illinois law, cash surrender value is expressly exempt, see In re Schriar, 284 F.2d 471 (7th Cir. 1960). We therefore hold, in keeping to the majority rule, that the term "proceeds or avails" as used in the Indiana exemption statute applies equally to the cash surrender value of life insurance policies.

In construing the exemption statute as we have, we are not moved by the policy arguments of the Trustee. If our interpretation of the clear words of the Indiana statute does not coincide with the legislative objectives, then the remedy lies with the legislature and not with the Courts.

We conclude, therefore, that the Order of the Referee should be, and it is, hereby, reversed. These proceedings are remanded to the Referee with instructions to deny the Trustee's Petition for a Turnover Order, and to allow the claimed exemption of the policies herein referred to.